Mr. Justice Cox
delivered the opinion of the court.
These plaintiffs are colored people, who have brought this ¡action of ejectment to recover a small piece of land outside the city, in the county of Washington. They claim to be the nephew and niece of James Taylor, and the children of .a colored man named Ben Anderson ; both Taylor and Anderson having been formerly slaves in Virginia.
The case has already been twice tried, and we, therefore, ¡have great reluctance in sending it back. But it seems to •us that the record discloses errors which were prejudicial to 'the defendant, and at the same time discloses possibilities of ■ a better case for the plaintiffs.
In order to make out title in the first instance, at the trial, the plaintiffs produced in evidence the decree of this court .passed in 1819, for a sale of this property, and a subsequent regular chain of conveyances down to James Taylor, the .propositus,- and rested upon that as proof of title.
The defendant objected that that was not sufficient proof -of title ; that it was incumbent on the plaintiffs to go back •to the original source of title, the State of Maryland or the United States, there being in this case no proof of possession in conformity with the deeds, but simply record title from 1819 to 1871. The court below held that this was sufficient .proof of title.
There was, as we think, error in that. But perhaps it may -be cured, as we shall see hereafter.
Undoubtedly, the general rule is, that in seeking to make *280 out proof of record title, the plaintiff must go back to the original source, and show a grant from either the State of Maryland or the United States, and then if there should be a hiatus in the chain of title, twenty years’ possession in conformity with the deeds will raise a presumption of the missing links. It is not absolutely necessary, therefore, to show a regular succession of conveyances from the State all the way down. In this case there was no possession shown, but simply the naked proof of record title from 1819 to 1871, and the court erred in ruling that that was sufficient proof.
But there is another rule of law which may obviate the difficulty, and that is, that where both parties claim title from the same source, it is not necessary to go beyond that source. For example, one man claims to be the heir of a decedent, and another claims to be his devisee. In an action by one against the other, it is not necessary to prove the title of the decedent. The only question is, who has derived title from him ?
In the next place, the defendant, instead of resting upon the defect in the plaintiffs’ proof, went on, himself, to prove that the title of James Taylor, which the plaintiffs claim to* have inherited, had been devised by him to Mary A. Smith,, wife of the defendant.
So that, the defendant then showed that he relied upon a. title derived from the same source as that upon which tim plaintiffs depended. As far as the first error is concerned, it must be held to have been cured by the defendant.
Further on, after having shown a record title down to James Taylor, in order to establish the relationship between plaintiffs and James Taylor, they offered in evidence the declarations of Ben Anderson, their father, that he was the brother of James Taylor. The form in which the offer is made, as stated in the bill of exceptions, is this:
That, previous to his father’s death, which occurred in 1867, his father told him that he, Ben Anderson, had a. brother named James, who, when quite young, was sold in slavery to a man named Taylor, in Virginia, and afterwards. *281 to a man named Allen, and that he (Ben Anderson) had no other brother and no sister.
That does not seem to go very far towards establishing the fact that this James Taylor was the Virginia James Taylor. The only proof is, that he was sold t:o a. man named Taylor ; but whether that brother assumed'the. náíme of his master, and became James Taylor, is not pretended to be testified to.
But suppose the brother had been identified, the question then arises, whether the declarations of a deceased party are sufficient to establish his relationship to' another deceased party. The declarations are objected to on two grounds : 1st. The witness is not proved aliunde to be a relation of the family ; and, 2nd. That the deceased, whose declarations are offered in evidence, are not proved aliunde to be such.
The rule on that subject is, that you cannot establish the relationship of the declarant himself by his own declarations, but that the relationship must be proved aliunde; and when once that is established, then his declarations as to kinship of other parties are admissible. This was settled in the ease of the Banbury Peerage and other cases, in England. In that case a bill in chancery, in the first instance, by one as next friend of an infant, was offered in evidence, wherein the complainant describes himself as the uncle of the'infant in question. And the answers of other -parties, speaking of their relationship to the infant, were offered, all of them being dead. These were offered in evidence as the declarations of deceased persons, in order to prove the legitimacy of the infant in question. The question was submitted by the House of Lords to all the judges, and they-unanimously held that such declarations could not be received in evidence without proving aliunde that the uncle and the other so-called relatives were related to the infant,
There is an exception allowed only in cases of very ancient pedigree, where it is impossible to find proof of the declarant’s relationship otherwise than by his own declarations. But even in that case, it is said in Phillips on Evidence :
“ Still some degree of evidence is required, otherwise a mere stranger, by claiming alliance .with a family, might *282 assume the power of materially altering the rights of its several branches by making statements in his lifetime respecting them.” 1 Phillips’ Ev. (4 Am. Ed. from 10 Eng.), 275-6.
The same question was settled in the case of the Leigh Peerage and Berkley Peerage cases, in which it was held that the relationship of the declarant must be established aliunde.
It seems to us, therefore, that the declarations of Ben Anderson, the father of the plaintiffs, were not admissible to show that he was the brother of James Taylor.
The proof was followed up by the statements of several people, who lived on the adjoining plantation to James Taylor, that they had heard both James Taylor himself and Ben Anderson declare that they were brothers. Those declarations were excepted to. As far as the exception relates to the declarations of Ben Anderson, the same observations might be made as to the declarations referred to in the second exception. The declarations of James Taylor, however, are not •open to that objection. There is no reason why they should not be received. He has the right to designate his heirs ; whether he be mistaken as to the relationship or not con■ce’rns no one but himself. His declarations were properly admitted. .
In the fourth exception it appears that the plaintiffs offered evidence tending to show that Ben. Anderson and •Chloe Anderson were both slaves and lived on the same plantation as man and wife. And then the plaintiffs rested, without offering any proof tending to show a marriage between the father and mother of Ben Anderson, or that Ben Anderson, the father,and Chloe,the mother of the plaintiff's, were married. In other words, the plaintiffs content themselves with proving that the father and mother lived together as slaves and as man and wife, but offered no proof of marriage, either according to law or according to any custom prevailing at the time in any State. The defendant’s counsel prayed the court to instruct the jury that, in the absence of such testimony, they must find for the defendant j which the court refused.
*283 Ordinarily, we know, marriage must be established by proof of marriage rites according to law. There is, however, an act of Congress, approved 6th of February, 1879, which provides, in substance, that the issue of colored persons cohabiting as man and wife, according to the custom prevalent in the state before the emancipation of slaves, shall be deemed legitimate.
But there is no proof in this case of any marriage, nor is there any proof of the custom in that regard.
Section 724, R. S. D. C., provides: that, “all colored persons in the District, who previous to their actual emancipation, had undertaken and agreed to occupy the relation to each other of husband and wife, and were cohabiting together as such, or in any way recognizing the relation as existing, on the 25th day of July, 1866, whether the rites of marriage have been celebrated between them or not, are deemed husband wife, and are entitled to all the rights and privileges, and subject to the duties and obligations of that relation, in like manner as if they had been duly married according to law.”
That applies, how7ever, only to those who resided in the District of Columbia and, therefore, it is not urged in this case. But there is a statute of Virginia, on this subject, passed some time in 1866, almost in toiidem verbis with the statute of the District of Columbia, w7hich applies to former slaves who were cohabiting as man and wife at the date of the statute, and their offspring.
In this ease, however, although it is testified that Ben Anderson and Chloe lived as man and wife, it does not appear that they continued to occupy that relation at the time the act of Virginia w7as passed. There is no evidence on that subject. It would be quite prudent, perhaps, forjffte plaintiffs,¿.in another trial to offer' that Virginia act in evidence.
But, as the case now stands, the proof does not come up to the requirements of the law, as establishing lawful marriage between the the parents of these plaintiffs, and that exception, we think, is well taken. And that is suf *284 ficient to dispose of the case, and involve the necessity of a new trial.
Before we leave the case, however, there is one other matter to be adverted to.
The defendant offered a paper purporting to be the will of James Taylor, whereby this real estate was devised to Mary A. Smithand he has offered evidence, further, to show that she took sole possession of such real estate upon the death of Taylor, by virtue of his will, and has ever since claimed to own the same by virtue thereof.
This suit is brought against the husband (Vm. Smith) of the devisee in that alleged will. It is not proved in the case that he was in possession of, or that he claimed to own the property. This was not, however, formally excepted to by the defendant, and the defendant, on his part, undertook to show that Mary A. Smith, his wife, had this property devised to her, and took possession of it in pursuance of the devise ; in this argumentative way, showing that defendant did not claim. I merely suggest this now to show that on another trial the plaintiffs had better prove affirmatively that the defendant was in possession.
For the foregoing reasons, a new trial is granted.