Vassilios **LIACAKOS**, a/k/a **William G. Lias**, Plaintiff,

v.

Robert F. **KENNEDY**, Attorney General of the United States, Defendant.

Civ. A. No. 5249–55.

United States District Court
District of Columbia.
June 29, 1961.

Jack Wasserman and David Carliner, Washington, D. C., for plaintiff.

David C. Acheson, U. S. Atty., E. Riley Casey, Gil Zimmerman and William A. Matthews, Sp. Assts. to U. S. Atty., Washington, D. C., for defendant.

HOLTZOFF, District Judge.

This is the trial of an action brought by the plaintiff, William Lias, to set aside an order directing his deportation as an alien illegally in the United States. The plaintiff, in addition to questioning the validity of the deportation proceeding itself and the final order therein, also challenges the ruling of the Immigration authorities that he is an alien. The plaintiff claims to be a natural born citizen of the United States and seeks a declaration of his nationality. In effect, this proceeding combines two distinct causes of action: a cause of action for a declaratory judgment establishing citi-

.zenship of the United States; and a cause of action to review and set aside the deportation order made in the administrative proceeding.

 It is well established that an action for a declaratory judgment lies to secure an adjudication that the plaintiff is a citizen of the United States. Perkins v. Elg, 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320; Tom Mung Ngow v. Dulles, D.C., 122 F.Supp. 709. The Court of Appeals for this Circuit has further held that an action for a declaratory judgment to establish citizenship may be combined with an action to review the validity of the administrative proceeding. Frank v. Rogers, 102 U.S.App.D.C. 367, 253 F.2d 889.

 An action for declaratory judgment differs in important respects from an action to review the validity of the administrative proceeding. The latter is limited to a consideration of the administrative record, and the only questions open are whether there is any error of law in the proceeding and whether there is substantial evidence to sustain the findings of fact. An action for a declaratory judgment, however, involves a trial *de novo*. A ruling of an administrative official denying citizenship has no *prima facie* effect or any other effect except to serve as a basis for establishing a justiciable controversy. What is being tried now is the cause of action for a declaratory judgment to establish citizenship. In such an action the burden of proof is on the plaintiff. This burden of proof, however, need not be sustained beyond a reasonable doubt, but merely by a fair preponderance of the evidence, for naturally, the proceeding is of a civil nature.

The plaintiff claims that he is a natural-born citizen of the United States, having been born in Wheeling, West Virginia, on July 14, 1900. He claims that when he was two or three years of age his parents returned to their native Greece, where his father later died. He further claims that in 1909 his widowed mother came back to the United States with the plaintiff's two older sisters and himself. Admittedly, the plaintiff has been living in Wheeling, West Virginia, continuously since 1909. The Government contends, however, that he was born in Cythion, Greece, and that he was brought here by his mother in 1909, instead of having been previously born here, taken back to Greece and returned here in 1909.

The case is not free from doubt. There are many discrepancies in the testimony. In weighing evidence, it is well to bear in mind the well-known statement of Lord Mansfield in Blatch v. Archer, 1 Cowper 63, 66, 98 English Reports 969, 970, to the effect that:

> "It is certainly a maxim that all evidence is to be weighed according to the proof which it was in the power of one side to have produced, and in the power of the other to have contradicted."

This maxim has been often quoted. It was referred to favorably by the Supreme Court in Mammoth Oil Co. v. United States, 275 U.S. 13, 51, 48 S.Ct. 1, 72 L.Ed. 137, and by Judge Parker in the opinion of the Fourth Circuit in Henderson v. Richardson Co., 25 F.2d 225, 228.

We start with the important fact that there is no contemporaneous record of the plaintiff's birth, either in Wheeling, West Virginia, or in Cythion, Greece. Necessarily, a record of birth contemporaneously made by governmental authority in official records would be almost conclusive evidence of birth. There is no such record in Wheeling, West Virginia. The Government, through its counsel, conducted an exhaustive and very able investigation in Greece, that resulted in uncovering many very old records in which the plaintiff's forebears are named, but again there is no record of the plaintiff's birth. Neither side, in other words, has been able to produce anything like a contemporaneous birth certificate.

 It is a matter of common knowledge that in the United States, at least, until recent years there were many localities that did not maintain comprehen-

sive and complete vital statistics or birth records, and that even in those metropolitan centers in which such records were maintained some have been lost or destroyed accidentally, from time to time, either by fire or flood or other casualties. Consequently, too much significance cannot be attached to the absence of a birth certificate, although this circumstance creates additional problems both for counsel and for the Court. While there was no burden on the Government to show that the records of Wheeling, West Virginia, listing births that occurred in that city in the year 1900 are extant and complete, nevertheless, it is a fair inference, in view of the very thorough investigation that was made by the Government, that if this were the fact the Government would have ascertained it to be so. Consequently, we have to decide the case on other evidence, no one item being conclusive, weighing it in the light of Lord Mansfield's famous maxim, to which reference has been made.

Before proceeding to a discussion of the evidence it should be observed that the ground on which deportation is sought is a highly technical one. The Government does not seek to deport the plaintiff as an alien because of any crimes that he may have committed or because he is a subversive individual or for any reason going to his merits or demerits. The ground of deportation is that on one occasion he crossed to Canada, from Detroit to Windsor, for a social visit, remained there about a day and returned without presenting, as the regulations required in respect to an alien, either a re-entry permit or a border-crossing pass. If he was a citizen, of course, such a document was not required. If he was an alien, such a document was needed and his entry without it was technically illegal. If his entry was illegal, in the eyes of the law he is deportable, and it is on this rather tenuous ground that deportation is sought.

It may be read between the lines that this incident is used as a reed on which to lean the deportation proceeding, because the plaintiff, according to the evidence, has been engaged over the years in a series of criminal and unsavory activities. He was convicted at least three times for violations of the national prohibition laws, which involved two sentences to Atlanta penitentiary. He was convicted of a misdemeanor in connection with the operation of a policy lottery. Further, apparently, in addition to operating a race track, which in and of itself is a legitimate occupation, he has been engaged in certain activities that were on the fringe of morality. But the duty of the Court is to decide the question of law and fact, and nothing else, that is presented in this proceeding, and not to pass judgment upon the morality of his life.

We start the consideration of the evidence with what is sometimes known as a delayed birth certificate issued by the proper authorities of the State of West Virginia. One was issued on October 28, 1946 by the Clerk of the County Court of the County of Ohio, State of West Virginia, in which the City of Wheeling is located, and the other was issued on November 1, 1946 by the Director of Health of the State of West Virginia and State Registrar of Vital Statistics. Each of these certificates attests to the fact that the plaintiff was born on July 14, 1900 in Wheeling, West Virginia.

Naturally, the same weight is not attached to a birth certificate of a delayed nature, such as these, as would be accorded to a contemporaneous birth record. Nevertheless, it is sufficient, without anything else, to establish a *prima facie* case. Delayed birth certificates are issued pursuant to State statutes. Such State statutes were enacted because of the difficulties that many Americans born in this country have in obtaining birth certificates due to the circumstances to which the Court has already adverted. In fact, very frequently it is much harder for a natural-born citizen of the United States to obtain proof of his citizenship than it is for a naturalized citizen, because the naturalized citizen always has a

naturalization certificate. The Passport Bureau of the State Department recognizes this by its willingness to accept affidavits in lieu of birth certificates.

We now turn to some of the records unearthed in Greece. What is called an extract of a penal record of the plaintiff of the Office of The Ministry of Justice refers to the fact that he was born in the United States in 1899 and that his penal status is nil. There is a certificate from the Mayor of Cythion to the effect that plaintiff's name is carried in the Males Register of the Municipality as having been born in America of Greek citizen parents and as having come to Greece with his parents. There are other documents showing that he, together with other members of his family, has been carried on the Males Register of this Greek Municipality.

The evidence tends to show that citizenship in Greece is based on *jus sanguinis* rather than on *jus soli* and that, consequently, a person born abroad of Greek parents is regarded by Greece as a subject of Greece,—this, of course, is true of many Continental countries— and that his name is carried on what is known as the Males Register, which is used as a basis for listing persons who are subject to military duty. There appears to be no Greek record specifically attesting to the fact that the plaintiff was born in that country.

In 1926 the plaintiff was married, and the marriage license issued by the County of Brooke in West Virginia recites that the place of the husband's birth was Wheeling, West Virginia. When he arrived at the Atlanta penitentiary as a prisoner on June 24, 1926, he was required to sign a statement containing answers to certain questions and gave West Virginia as an answer to the inquiry as to his place of nativity. He had a son born on January 2, 1936, and the father's birthplace in the son's birth certificate is recorded as Wheeling, West Virginia. A daughter was born on November 3, 1939, and her birth certificate also recites the father's birthplace as being Wheeling, West Virginia. In 1940 he obtained a number of small insurance policies on the lives of his two children, and in each application signed by him he gives Wheeling, West Virginia, as the place of his birth. On April 18, 1932, he was back in the Atlanta penitentiary and again he gave the place of his nativity as West Virginia. In addition, his application for parole, dated November 15, 1932, states that he was born and raised in Wheeling, West Virginia. In 1940 he was carried on local registration lists as an eligible voter.

The plaintiff supplemented this documentary evidence by testimony to the effect that his mother had told him that he was born in Wheeling, West Virginia. Such evidence is admissible under the exception to the hearsay rule relating to pedigree. While the Court does not attach too much weight to it, nevertheless, it is some corroboration of the documentary evidence, which to the Court appears to be much more weighty.

If this array of documentary evidence stood alone, the Court would have no question about the case whatever. However, as stated by the Court at the opening of its remarks, the case is not free from doubt, because on two important occasions it appears that the plaintiff represented himself as an alien. The first occasion is in connection with his registration for the draft in the First World War. His draft registration card contains the answer "No" to the question whether he is a citizen of the United States. Evidence was introduced by the plaintiff challenging the genuineness of his signature to the draft registration card. The Court is not satisfied with that evidence. The Court is inclined to draw the inference that, very likely, the plaintiff was desirous of dodging the draft and used this means of avoiding liability to military service. He did not report for military service in Greece and he avoided it in this country. This Court, however, is not trying him on a charge of evading the draft during the First World War.

The other important statement is in connection with the marriage certificate on the occasion of his second marriage, which took place in 1935 in Brooklyn, New York. The affidavit attached to the license to marry purporting to be signed by the plaintiff recites that the country of his birth was Greece. The explanation adduced in his behalf is that actually the groom and his prospective bride went to the marriage license bureau in a festive mood, accompanied by a number of close relatives, and that in fact the information contained in the affidavit was given by one or two of the relatives while the plaintiff and his prospective bride stood aside and, according to the deposition of the plaintiff, somewhat under the influence of alcoholic beverages, as is not unlikely on an occasion such as that. While this explanation is not completely convincing, nevertheless, the fact remains that on every occasion in which the plaintiff was called upon to state the place of his birth, except the two just mentioned, he gave Wheeling, West Virginia, as his birthplace, and that information to that effect appears in the record of the Greek Municipality in which his family had its origin.

It must be borne in mind that citizenship of the United States is a very precious thing; that natural-born citizens very frequently have a great deal of difficulty in proving their status due to uncertainties of birth records and that this circumstance should not lead to a lack of stability of citizenship because, if it did, many a legitimate citizen of the United States would find himself deprived of it.

The Court is of the opinion that, weighing the evidence on both sides, the plaintiff has established by a fair preponderance of the evidence that he is a natural-born citizen of the United States, and the Court so finds.

A transcript of this oral opinion will constitute the findings of fact and the conclusions of law.

Counsel may submit a proposed judgment in accordance therewith.