**UNITED STATES of America,**
**Appellee,**

v.

**Elias Ragi GHALOUB, alias Louis John Ferris, alias Louis Corey, alias Nisar John Ferris, Defendant-Appellant.**

**No. 174, Docket 30664.**

United States Court of Appeals
Second Circuit.

Argued Nov. 14, 1966.

Decided Dec. 28, 1966.

---

Joseph S. Wool, Burlington, Vt., for appellant.

Thomas P. Whalen, Asst. U. S. Atty., (Joseph F. Radigan, U. S. Atty., for the District of Vermont, Rutland, Vt., on the brief), for appellee.

Before: WATERMAN, MOORE and HAYS, Circuit Judges.

MOORE, Circuit Judge.

On March 12, 1964, the United States filed a four-count information charging Elias Ragi Ghaloub, *alias* Louis John Ferris *alias* Louis Corey, *alias* Nisar John Ferris (appellant herein) with violations of 8 U.S.C. § 1252(d) for wilfully failing to comply with an Order of Supervision issued by the United States Immigration and Naturalization Service. The Order of Supervision was issued in consequence of an outstanding Final Order of Deportation entered against appellant on October 26, 1961 by the Office of the Attorney General of the United States. After arraignment, but prior to trial on the above information, appellant attacked the validity of the underlying deportation order by moving for a de novo civil hearing on the issue of nationality pursuant to 8 U.S.C. § 1105a(a) (6).[1] After holding such a hearing, the district court found that appellant was not and never had been a citizen of the United States, but was an alien and a citizen of Syria. An

---

1. Providing in pertinent part:

"If the validity of a deportation order has not been judicially determined, its validity may be challenged in a criminal proceeding against the alien for violation of subsection (d) or (e) of section 1252 of this title only by separate motion for judicial review before trial. Such motion shall be determined by the court without a jury and before the trial of the general issue. Whenever a claim to United States nationality is made in such a motion, and in the opinion of the court, a genuine issue of material fact as to the alien's nationality is presented, the court shall accord him a hearing de novo on the nationality claim and determine that issue as if proceedings had been initiated under the provisions of section 2201 of Title 28. Any such alien shall not be entitled to have such issue determined under section 1503(a) of this title or otherwise. * * * If the deportation order is held invalid, the court shall dismiss the indictment and the United States shall have the right to appeal to the court of appeals within thirty days. * * * No petition for review under this section may be filed by any alien during the pendency of a criminal proceeding against such alien for violation of subsection (d) or (e) of section 1252 of this title".

order directing appellant to abide by the Final Order of Deportation was subsequently entered, from which this appeal stems. We uphold the district court finding that appellant was an alien and consequently affirm.

■■ Appellant's first point on appeal is that, because his evidence made out a prima facie case of citizenship, the government was under a burden to prove its case by "clear, unequivocal and convincing evidence," and failed to meet this burden. It is settled that a plaintiff seeking a declaratory judgment of citizenship (the governing procedure for a § 1105a(a) (6) de novo hearing on nationality) has the burden of proving that he is a United States citizen. Augello v. Dulles, 220 F.2d 344, 345 (2d Cir. 1955); Pandolfo v. Acheson, 202 F.2d 38, 40 (2d Cir. 1953). However, if citizenship is conceded, or if the plaintiff shows a prior governmental determination establishing his citizenship, the government must show by "clear, unequivocal and convincing evidence" either that the claimant has expatriated himself, Perez v. Brownell, 356 U.S. 44, 47, n. 2, 78 S.Ct. 568, 2 L.Ed.2d 603 (1958); Monaco v. Dulles, 210 F.2d 760, 762 (2d Cir. 1954); Pandolfo v. Acheson, supra, or that the prior administrative determination was erroneous. Lee Hou Lung v. Dulles, 261 F.2d 719 (9th Cir. 1958); Delmore v. Brownell, 236 F.2d 598, 600 (3d Cir. 1956).

■ Appellant contends that a letter sent to him by the Immigration and Naturalization Service dated May 8, 1940,[2] constituted an administrative determination that he was a citizen. At that time, appellant, having lived in this country for several years, was excluded from reentry after one of many short trips to Canada. Appellant claims that

after receiving the above letter, he was admitted as a citizen. A reading of the letter, however, does not disclose any definite adjudication of appellant's status, but merely indicates that the government no longer sought to exclude him by a particular procedure. Appellant's reliance on Delmore v. Brownell, supra, is misplaced, for in that case the Commissioner of Immigration had written: " * * * it is the view of this Service in light of the facts submitted and considered, that Mr. Delmore may properly be regarded a native and citizen of the United States." 236 F.2d at 600. That letter, while no formal adjudication, clearly informed Delmore that the INS considered him to be a citizen; the 1940 letter to appellant fell far short of such an unequivocal statement.

■ Appellant also asserts that he made out a prima facie case of citizenship at the hearing through the introduction of the "birth certificate" of one Nisar Ferris, a child purportedly born in Claremont, New Hampshire on July 17, 1905. The circumstances surrounding the recording of this "birth" are highly suspicious (the "birth", for example, was not recorded until April 2, 1931—a short period before what the government contends was appellant's first entry into the United States), and while the district court did not specifically find the document to be fraudulent, its finding that the certificate was not the birth certificate of appellant was clearly well founded on the record. Nor does certain other evidence introduced by appellant (such as purported statements to appellant by his mother; evidence of appellant's long standing dry cleaning business in Vermont; evidence of appellant's frequent travels in and out of the United States; evidence that appellant was regarded as a citizen in the community in which he lived) establish a prima facie case re-

2. The letter stated in its entirety:
"With reference to your letter of April 15, 1940, addressed to the Secretary of Labor, which was sent to this Service for consideration regarding your exclusion by a Board of Special Inquiry at St. Albans, Vermont, April 1, 1940, you are informed that the Department has authorized your reentry into the United States on the ground that your exclusion by the Board of Special Inquiry was unauthorized."

quiring clear, unequivocal and convincing rebuttal by the government. Since there is substantial evidence to support the trial court's finding that appellant is not a citizen, it is not clearly erroneous and must be sustained.

■ Moreover, even if the government were required to prove its case by the more exacting standard claimed by appellant, we believe it has done so, although admittedly the district court made no finding on this point. The government introduced substantial evidence to show that appellant's birth certificate was fraudulently obtained; that, as reported in certain Syrian census records, appellant was born in Blouza, Syria in 1908 or 1909; that appellant had stated he was born in Syria in an application for a Syrian passport; and that appellant's own testimony was materially inconsistent in many respects. This documentary and testimonial evidence constituted a clear, unequivocal and convincing rebuttal of appellant's case.

■ Appellant also contends on this appeal that the district court erred in introducing a summary of certain census records pertaining to Blouza, Syria—showing that an Elias Ghaloub was born in Blouza in 1908 or 1909 and emigrated to New York in 1927—on the grounds that the records constituted excludable hearsay. The summary was prepared by a Syrian census official and signed by the custodian of the census records whose signature was duly certified by the Beirut American Consul. If otherwise admissible, the census records were properly summarized, evidenced and authenticated under 28 U.S.C. § 1741 and Fed.R. Civ.Pro. 44(a).[3] Contending that the records were not otherwise "admissible", appellant argues that, as census information is usually taken by questioning heads of families and is not obtained upon the personal knowledge of the census taker, census records constitute double hearsay and while useful for general statistical purposes, they are unreliable as evidence of specific facts pertaining to individuals. Moreover, he continues, the investigative process in this particular case is not known.

■ It is generally true that census records are compiled chiefly to report classes of general facts and are readily received into evidence as proof of those facts. When, however, a census record is offered as evidence of a particular fact such as a litigant's age, the reported cases are in conflict as to whether the records should be excluded as hearsay. See 5 Wigmore § 1671(7). Some cases admitting census records to prove facts pertaining to an individual do so on the ground that the particular census in question was partially aimed at registering individuals for a given purpose. See Doto v. United States, 96 U.S.App.D.C. 17, 223 F.2d 309, 311, cert. denied, 350 U.S. 847, 76 S.Ct. 59, 100 L.Ed. 754 (1955) (census taken enumerated inhabitants "excluding aliens" for election district purposes, received into evidence to show defendant was an alien).

■ We believe the district court properly admitted into evidence the summary of the Syrian census records as being within the official records exception to the hearsay rule. Where, as here, the foreign census books are kept on a village by village basis by a centralized census bureau, the probable objectivity of the records in accurately indicating national origin (as distinguished from facts possibly subject to greater recording error such as a person's exact age) significantly overshadows the hearsay risks alluded to by appellant. In proceedings of this nature, foreign census reports—in the absence of a showing of any irregularity—may often be the only available evidence for establishing the country of origin of a particular litigant.

■ Finally, appellant's claim that the government was erroneously allowed to impeach its own witness is without merit. The district court did not abuse its wide discretion in permitting the im-

3. As it existed prior to the 1966 amendment effective July 1, 1966. The amend-

ed rule has no applicability to the instant case.

peaching of a "hostile" witness. See United States v. Graham, 102 F.2d 436, 441 (2d Cir.), cert. denied, 307 U.S. 643, 59 S.Ct. 1041, 83 L.Ed. 1524 (1939).

Affirmed.