**Bertha HILL, et al., Appellants,**

v.

**Malissa WHITE, et al., Appellees.**

**No. 90–934.**

District of Columbia Court of Appeals.

Submitted March 26, 1991.

Decided April 25, 1991.

---

Kurt Berlin and Robert W. Rifkin, Washington, D.C., were on the brief, for appellants.

Mitchell Linde and Michael Stern, Washington, D.C., were on the brief, for appellees.

Before BELSON and FARRELL, Associate Judges, and REILLY, Senior Judge.

FARRELL, Associate Judge:

In this appeal from a summary judgment order entered in an action to determine the lawful heirs of a decedent's estate, appellants argue that the trial judge's grant of appellees' motion for summary judgment was improper because a genuine issue regarding a material fact remained in dispute. After considering the materials arrayed in support of summary judgment in the light most favorable to appellants, we conclude that there is no remaining fact in issue that requires a trial for resolution. We therefore sustain the order of the trial judge.

## I.

James Guion [1] died in 1987 without a will while domiciled in the District of Columbia. He left no wife or lineal relatives; nor was he survived by brothers or sisters, or children of deceased brothers or sisters. To determine Guion's heirs, the personal representative of his estate filed an action in the Probate Division of the Superior Court. The trial judge granted summary judgment in favor of appellees Malissa Cratch White and Belva Cratch Blackwell, finding that they had demonstrated "all links to establish the relationship between defendants White and Blackwell and the decedent as first cousins once removed." [2]

Appellants Bertha Hill, Maxton Tuton, Florence Green, Wiley Rodman, Willie L. Hamilton, Ethel Gardner, Patricia Harvey, Aquilla Greene, and David Godley, each claim to be second cousins to the decedent,[3]

---

1. James Guion was named "Mensor Guion" at birth, and although that name appears on his birth certificate, he used the name "James" not "Mensor." The parties agree that James Guion and Mensor Guion are the same person.

2. The arcane nomenclature of genealogy can sometimes obscure the basic family relationships these terms are meant to illuminate. One's "first cousin once removed" is the child of one's grandparent's brother or sister. This definition describes the relationship claimed by appellees here: appellees trace their connection to the decedent through their father, who, they assert, was the brother of the decedent's grand-

mother. One's first cousin once removed may also be the child of one's first cousin, that is, the grandchild of one's aunt or uncle. *See* J. RITCHIE, N. ALFORD, JR., & R. EFFLAND, *Table of Consanguinity*, in CASES AND MATERIALS ON DECEDENTS' ESTATES AND TRUSTS 91 (7th ed. 1988).

3. Appellants note that the trial judge erroneously characterized appellants' declared relationship to the decedent, stating they claimed to be second cousins once removed, rather than second cousins, as was actually the case. At the same time, appellants concede in their brief that this misidentification is ultimately insignificant "because if appellees were first cousins once

and dispute White and Blackwell's status as the decedent's first cousins once removed. First cousins once removed are closer in degree of relationship to a decedent than are second cousins. *See* J. RITCHIE, *supra* note 2. Accordingly, in entering the summary judgment order, the trial judge also ruled that appellees "are the only collateral relations entitled to share in decedent's estate" because, as District of Columbia law provides: "After children, descendants, parents, brothers, and sisters of the deceased and their descendants, all collateral relations in equal degree share, and representation among the collaterals is not allowed." D.C.Code § 19–311 (1989).

Appellants brought this appeal of the trial judge's ruling, contending that summary judgment is inappropriate because a genuine and material issue of fact has not been resolved. Appellants argue that contrary to the claim made by appellees, Charles Cratch, appellees' father, and Jane Cratch Guion, the decedent's paternal grandmother, were not brother and sister,[4] so that appellees are not first cousins once removed to the decedent—indeed, have proved no family relationship to him at all. Appellants point to the 1880 Census submitted as an exhibit, which lists an "Eliza J." among the children of Easter Cratch and John F. Cratch,[5] along with a "Charles," but does not include a "Jane." Furthermore, the same census document states that Eliza J. Cratch was three years old in 1880 (indicating that Eliza J. Cratch was born in 1877), but the 1900 Census lists Jane Cratch Guion as twenty years old, with an 1880 date of birth. Appellants contend that the discrepancy in birthdates reflected in these two official government records [6] presents concrete evidence—and a triable issue—that Jane Cratch Guion, the

grandmother of the decedent, cannot be the same person as Eliza Jane Cratch.

In support of their motion for summary judgment appellees offered, along with the government documents stipulated to be authentic, an affidavit from Kenneth Minor, a second cousin of the decedent, stating that Guion had told him that "his [Guion's] closest relatives were his first cousins Melissa [sic] White and Belva Blackwell." Appellees also provided an affidavit from Anna Bailey. Bailey identifies herself as the daughter of Jesse Cratch,[7] who was the son of Charles and Mary Cratch and the brother of appellees, and states that appellees, the daughters of Charles and Mary Cratch, are her aunts. Bailey asserts that Jane Cratch Guion was her aunt and that Jane Cratch Guion told her that she had been given the name "Eliza Jane" at birth. Bailey also states that "[i]t was common family knowledge that Jane Cratch was the aunt of Melissa [sic] Cratch White and Belva Blackwell."

## II.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Super.Ct.Civ.R. 56(c). This court will uphold a summary judgment order "if (1) taking all reasonable inferences in the light most favorable to the nonmoving party, (2) a reasonable juror, acting reasonably, *could not* find for the nonmoving party, (3) under the appropriate burden of proof." *Nader v. de Toledano,* 408 A.2d 31, 42 (D.C.1979) (emphasis in original; footnote omitted), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980).

---

removed, they would be of closer degree to the decedent than appellants in either case."

4. Appellants and appellees agree that Jane Cratch Guion, who married Duffy Guion in 1896, was the mother of Mayhew Guion (the father of the decedent) and the grandmother of the decedent.

5. The parties agree that John F. Cratch (also referred to as "Fred") and Easter Cratch are the great grandparents of the decedent.

6. There is no dispute that these or any other documents submitted as exhibits are authentic.

7. In her affidavit, Bailey spells her father's name "Jessie," but his birth certificate reads "Jesse" and we have used that spelling.

In reviewing the grant of summary judgment, we examine the record independently, employing the same standard of review as the trial judge. *Spellman v. American Security Bank, N.A.,* 504 A.2d 1119, 1122 (D.C.1986). The focus of our inquiry is twofold: first, we look to see if the moving party has met its burden of proving that no material fact remains in dispute, and then we also must determine whether the party opposing the motion has offered "competent evidence admissible at trial showing that there is a genuine issue as to a material fact." *Nader,* 408 A.2d at 48. The burden on the nonmoving party is "that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)).[8]

### III.

Reviewing all of the evidentiary materials presented to the trial judge—the pleadings, the admissions of appellants, the exhibits, and the affidavits—and drawing all inferences that reasonably can be derived from these materials in the light most favorable to appellants, we agree with the trial judge that appellees have sustained their burden of proving the absence of a material factual dispute, while, at the same time, appellants have not adequately demonstrated the presence of a material contested fact. We reach this conclusion because we are not persuaded that the evidence offered by appellants in support of their contention is the "competent" or "sufficient" evidence required by this court to establish that a fact remains in dispute. Our touchstone here is the threshold determination that a judge ruling on a motion for summary judgment must employ: "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be resolved in favor of either party." *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

■ Appellants claim that the issue of whether appellees are the first cousins once removed of the decedent has not yet been settled.[9] They contend that the woman identified as the decedent's paternal grandmother, Jane Cratch Guion, is not the same person as the woman identified as appellees' aunt, Eliza Jane Cratch. As their sole proof of this point, however, they refer to the inconsistency in name and age on the census records and marriage license that were submitted as exhibits. The decedent's grandmother is entered as "Jane" on the 1900 Census record; her date of birth is listed as "April 1880." Also, a marriage license was issued to "Jane Cratch" and the decedent's grandfather, Duffy Guion, in July 1896. Appellees' aunt, however, is listed as "Eliza J. Cratch," age three, on

8. Our approach to the review of a summary judgment order under Super.Ct.Civ.R. 56(c) is informed by the United States Supreme Court's discussion of the proper application of summary judgment under Fed.R.Civ.P. 56(c), which is identical to the District of Columbia rule. In noting that the test for summary judgment "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion to the verdict," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), the Court explained that "summary judgment should be granted where the evidence is such that it 'would require a directed verdict for the moving party.'" *Id.* at 251, 106 S.Ct. at 2511 (quoting *Sartor v. Arkansas Gas Corp.,* 321 U.S. 620, 624, 64 S.Ct. 724, 727, 88 L.Ed. 967 (1944)). The trial judge considering a summary judgment motion focuses on the same question as the trial judge ruling on a directed verdict motion: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* 477 U.S. at 251–52, 106 S.Ct. at 2511–12.

9. No one disputes that this issue is a material one. Appellees' ancestral connection to the decedent, or the lack of such an affiliation, is material because it is a fact that has direct and uncontestable bearing on the outcome of the case. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 480 (1984).

the 1880 Census.[10] Appellants contend from this that appellees are not related to the decedent because the woman appellees declare to be their link to the decedent, "Eliza J.," is not actually related to him.

The differences in recorded age and name, however, are too slender a thread on which to hang the conclusion appellants urge. Inconsistencies abound in the documents provided here. The decedent was born "Mensor," the name found on his birth certificate, but actually known as "James"—a fact appellants do not dispute. The decedent's great grandfather is listed as "John F. Cratch" on the 1880 Census and "Fred Cratch" on the marriage license issued to his son Charles in July 1899; and on the same marriage license, Charles Cratch's wife-to-be is identified as "Mary Kenady ... daughter of Richard Kenady," though on two other government records submitted her name before marriage is spelled "Kennedy." Duffy Guion is listed as twenty-one years old on his marriage license, issued to him in 1896, but the 1900 Census, dated June 15, 1900, records his age as twenty-two years on his last birthday and his birthdate as September 1877. Most importantly, Jane Guion's age is listed as eighteen years on the marriage license issued to her and Duffy Guion on July 16, 1896, from which we can calculate a birthdate of 1878. This date conflicts with the 1900 Census that lists Jane Guion's birthdate as "April 1880."

Taking into account these numerous documentary contradictions concerning not only Jane Guion but other family members of the decedent as well, it is clear that the variations in name and age to which appellants point do not reflect a genuine and material issue of fact. The inconsistencies enumerated merely highlight inadequacies in the record keeping systems of the late 1800's and early 1900's in rural North Carolina,[11] rather than raise a sustainable

doubt that appellees actually are related to the decedent. Consequently, there is no factual question here requiring resolution by a trier of fact.

While appellants have not met their burden of demonstrating the need for a finder of fact to resolve a disputed issue, appellees have sustained their burden of showing that no material fact remains in dispute. Appellees submitted two affidavits in support of their claim that they are the first cousins once removed of the decedent. Kenneth Minor, whose status as a second cousin of the decedent is not disputed by the parties, states that appellees were identified to him by the decedent as the decedent's "closest relatives" and "first cousins." As appellants acknowledge, the decedent's statement to Minor regarding the relationship of appellees to the decedent is admissible as evidence. *Anderson v. Smith*, 13 D.C. (2 Mackey) 275, 282 (1883) (decedent's declarations regarding heirs are properly admitted because a decedent has the right to designate her or his own heirs).

■ In addition to the affidavit from Minor, appellees offered an affidavit from Anna Bailey, who, as appellants acknowledge, is the niece of appellees. Appellants also concede that Bailey is the daughter of Jesse Cratch, a son of Charles and Mary Cratch. Bailey states that the woman known as Jane Cratch Guion was her aunt and that Jane Cratch Guion told Bailey that she, Guion, had been named Eliza Jane at birth. The Bailey affidavit presents two separate levels of hearsay—on both of which it is admissible. First, Jane Cratch Guion's declaration that she had been given the name "Eliza Jane" when she was born is hearsay, because one cannot have personal knowledge of facts relating to one's own birth. Her statement is nevertheless admissible under the hearsay rule's "pedi-

---

**10.** The 1880 Census establishes appellees' connection to Eliza J. Cratch because it lists "Eliza J." as the sister of Charles Cratch. Appellants concede that Charles Cratch is the father of appellees. The 1900 Census does not identify Jane Guion's parents or siblings because it was taken after her marriage to Duffy Guion and records her as a member of his family.

**11.** Indeed, we note that a major gap in the documents presented here results from the North Carolina practice, alleged by appellees in their brief, of not recording birth certificates for women "until at least 1914."

gree exception," which permits the statement of an unavailable declarant regarding facts of personal or family history to be admitted even though the declarant did not have personal knowledge of the facts asserted. *Liacakos v. Kennedy,* 195 F.Supp. 630, 633 (D.D.C.1961) (plaintiff's testimony as to his birthplace admitted under pedigree exception); *see Fulkerson v. Holmes,* 117 U.S. 389, 397 (1886); 5 J. WIGMORE EVIDENCE §§ 1480–1502 (Chadbourn ed. 1974 & Supp.1990).[12] The second level of hearsay, Bailey's statement regarding what she had been told by her aunt, Jane Cratch Guion, likewise is properly admitted under the pedigree exception. *Wong You Henn v. Brownell,* 93 U.S.App.D.C. 43, 45, 207 F.2d 226, 227 (1953) (statements of two deceased brothers regarding the birthplace of another brother's children held admissible under the pedigree exception). Contrary to appellants' argument, then, there is no question that Jane Cratch Guion's statement in the Bailey affidavit identifying her name at birth is admissible.

Finally, as the trial judge recognized, the official documents are unambiguous in linking both Eliza J. Cratch and Jane Cratch Guion to Beaufort County, North Carolina, an improbable coincidence.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) (footnote and citation omitted). Reviewing all the documentary evidence, along with the affidavits submitted by appellees, we are satisfied that no issue of fact remains to be resolved and that appellees were entitled to summary judgment as a matter of law.

*Affirmed.*

---

**12.** *Cf.* Fed.R.Evid. 804(b)(4):

(4) Statement of personal or family history. (A) A statement concerning the declarant's own birth, adoption, marriage, divorce, legitimacy, relationship by blood, adoption, or marriage, ancestry, or other similar fact of personal or family history, even though declarant had no means of acquiring personal knowledge of the matter stated; or (B) a statement concerning the foregoing matters, and death also, of another person, if the declarant was related to the other by blood, adoption, or marriage or was so intimately associated with the other's family as to be likely to have accurate information concerning the matter declared.