UNITED STATES of America

v.

**Johann BREYER.**

Civ. No. 92–2319.

United States District Court,
E.D. Pennsylvania.

Dec. 20, 1993.

As Amended Jan. 19, 1994.

sisted in the persecution of people because of race, religion or national origin as an armed guard at the Buchenwald concentration camp and the Auschwitz death camp. Because of the defendant's assistance in persecution, Section 13 of the Displaced Persons Act of 1948 ("DPA"), as amended, made the defendant's entry visa into the United States invalid. The court also found that the defendant's service as a member of the SS *Totenkopf* of the *Waffen–SS* constituted participation in a movement hostile to the United States and thus rendered him ineligible to receive an entry visa under Section 13 of the DPA. The court concluded that because the defendant was ineligible for the entry visa he obtained in order to enter the United States, the defendant failed to satisfy all the statutory requirements for naturalization. Therefore, the court held that the defendant's citizenship by naturalization was illegally procured. The government withdrew the other counts of the complaint at trial.

Debra Leanne Wrobel Cohn, U.S. Attys. Office, Philadelphia, PA, Denise Noonan Slavin, U.S. Dept. of Justice, Crim. Div., Office of Special Investigations, Michael D. Bergman, U.S. Dept. of Justice–Office of Special Investigations, Washington, DC, for plaintiff.

John Rogers Carroll, Carroll & Carroll, Joseph V. Restifo, Philadelphia, PA, for defendant.

**FINDINGS OF FACT, CONCLUSIONS
OF LAW, AND ORDER**

YOHN, District Judge.

I. *INTRODUCTION*

This is a denaturalization action filed by the United States government pursuant to Section 340(a) of the Immigration and Nationality Act of 1952, as amended, 8 U.S.C. § 1451(a). The court has jurisdiction under 28 U.S.C. § 1345 and 8 U.S.C. §§ 1421(a) and 1451(a).

On July 7, 1993, the court granted the government's motion for summary judgment with respect to counts I and II of its complaint. *United States v. Breyer*, 829 F.Supp. 773 (E.D.Pa.1993). The court found that the defendant, Johann Breyer, advocated or as-

The defendant responded to the government's motion for summary judgment that he was a citizen by birth because his mother was born in the United States. The court examined this affirmative defense separately because it found it to be a distinct issue from that of naturalization. The court found that Section 1993 of the Revised Statute of 1874 as applied to the defendant was unconstitutional since it conferred United States citizenship to foreign-born offspring of United States citizen fathers but not to United States citizen mothers. The court concluded that this statute was unconstitutional because there was no legitimate good faith basis for the gender discrimination and it therefore violated the equal protection component of the Fifth Amendment due process clause. The court expressly reserved the factual issue of the birthplace of the defendant's mother for trial.

The court conducted the bench trial on the remaining issues during four days in September, 1993, and October, 1993. The focus of the trial was the birthplace of the defendant's mother. After carefully reviewing the testimony and the exhibits, and the suggested findings of fact and conclusions of law submitted by the parties, the court sets forth the

following findings of fact and conclusions of law.

## II. *FINDINGS OF FACT*

### A. *Defendant's Background*

1. The defendant's father was Johann (Jan) Breyer. He was born on March 13, 1891, in Neuwalddorf (Nova Lesna), Czechoslovakia.

2. The defendant's mother was Katharina Susanna Breyer.

3. The defendant's parents were married on November 17, 1913, in Neuwalddorf, Czechoslovakia. Neither of the defendant's parents ever resided in the United States after their marriage.

4. The defendant was born on May 30, 1925, in Neuwalddorf, Czechoslovakia.

5. The defendant resided with his parents in Neuwalddorf, Czechoslovakia from 1925 to 1943.

### B. *Defendant's Mother's Birthplace*

6. No birth certificate for the defendant's mother has been located in Philadelphia, Pennsylvania.

7. No birth certificate for the defendant's mother has been located in Slovakia by the District Office Poprad Record Office of Velky Slavkov, the Embassy of the Slovak Republic or the District Office Poprad to the Consulate General of the Slovak Republic in Munich.

8. No United States passport was ever issued for the defendant's mother.

9. No person is alive today that was present at the birth of the defendant's mother.

10. Because of the absence of a contemporaneous official record of the birthplace of the defendant's mother, the parties presented secondary evidence as to the place of her birth.

### (a) *Facts Supporting Birth in the United States*

11. The parish register for the Bethany Lutheran Church of Manayunk, which is located in the Roxborough section of Philadelphia, Pennsylvania, contains an entry in volume 2, pages 96 and 97, line 17 that defendant's mother, Katharina Susanna Breyer, was baptized at the church on March 27, 1898. This entry also states that the defendant's mother was born on December 23, 1897, to Johann Breyer and Katharina Schmegner.

12. Other entries in volume 2 of the parish register for the Bethany Lutheran Church of Manayunk contain a notation when a child baptized in the church was born in another country or born in a county outside of Philadelphia. The entries of place of birth were written by the same pastor who wrote the entry for the defendant's mother. The baptismal entry for the defendant's mother contains no such notation that her place of birth was outside the country or outside of Philadelphia County.

13. The parish register for the Bethany Lutheran Church of Manayunk also contains an entry in volume 2, pages 82 and 83, line 30 that Maria Breyer, the defendant's mother's sister (the defendant's aunt), was baptized at the church on September 1, 1895. This entry notes that Maria Breyer was born on August 10, 1895, to Johann Breyer and Katharina Schmegner. The baptismal entry for Maria Breyer also does not contain a notation that her place of birth was outside the country or outside of Philadelphia County.

14. A 1930 Czechoslovak census for the defendant's childhood household in Neuwalddorf, which was taken before the outbreak of World War II, states that the defendant's mother was born on December 23, 1897, in Philadelphia, Pennsylvania.

15. The government concedes that since 1952, the defendant has consistently stated that his mother was born in the United States.

16. The defendant's mother's application for expulsion damages that was signed by her on March 17, 1953, states that she was born on December 23, 1897 in Manayunk, Pennsylvania in the United States.

17. The September 28, 1953, Federal Republic of Germany Personal Identification card for the defendant's mother, which contains her photograph and her signature,

states that she was born on December 23, 1897, in Manayunk in the United States.

18. The defendant's mother's application for the issuance of an identity card for displaced persons and refugees that was signed by her on October 11, 1953, states that she was born on December 23, 1897, in Manayunk in the United States.

19. The Federal Republic of Germany Identification Card for Displaced Persons and Refugees that was issued on March 18, 1955, to the defendant's mother and which was signed by her states that she was born on December 23, 1897, in Manayunk in the United States.

20. The defendant's application to file a petition for naturalization that was filed on August 19, 1957, states that his mother was a citizen of the United States since she was born in Philadelphia, Pennsylvania in 1897.

21. The death certificate for the defendant's mother, which was issued on July 14, 1964, states that she was born on December 23, 1897, in Manayunk, Pennsylvania in the United States.

22. By stipulation of the parties, if the defendant's brother-in-law, Adalbert Breyer, was called as a witness, he would testify that the defenadnt's mother told him when he was a young child that she was born in the Manayunk section of Philadelphia, Pennsylvania in the United States. Adalbert Breyer would also testify that when he resided in Neuwalddorf, Czechoslovakia, he heard family members and members of the community state that the defendant's mother was born in the United States.

23. The defendant's mother had a reputation among the community of Neuwalddorf, Czechoslovakia that she was born in the United States. (September 7, 1993 testimony of Margaret Badke; Deposition testimony of Mary Muhlenbacher and Elvira Zaborsky).

24. The defendant's son, Henry Breyer, visited the defendant's mother (his grandmother) in Germany during a family visit in 1958 and 1959. When Henry Breyer was in Germany, he primarily spoke German. The defendant's mother told him in German that she was born in Philadelphia. During Henry Breyer's visit, the defendant's mother would sometimes speak to him in English.

25. Christa Henolova Breyer, the divorced wife of the defendant, first met the defendant's mother in 1950. Christa Breyer saw the defendant's mother frequently from 1950 until the time she emigrated to the United States in 1953. After Christa Breyer and the defendant decided to emigrate to the United States, the defendant's mother told her on numerous occasions that she was born in the United States and referred to Philadelphia as the City of Brotherly Love.

26. The defendant's mother's two brothers, Jacob and John Breyer, lived in the United States. They told both Christa Breyer and the defendant that the defendant's mother was born in Philadelphia.

27. Christa Breyer testified that other family members and relatives in Pirk, Germany told her that the defendant's mother was born in the United States.

28. The defendant testified that his mother told him that she was born in the Manayunk section of Philadelphia.

29. The defendant's mother's reputation among the defendant's family was that she had been born in the United States. (September 7, 1993 testimony of the defendant, the defendant's two sons, Herbert Breyer and Henry Breyer, and Christa Breyer).

(b) *Facts Not Supporting Birthplace in the United States*

30. The government produced the defendant's *Deutsche Partei* registration card. This card states that the defendant's mother was born on December 23, 1897, in Neuwalddorf.

31. The *Deutsche Partei* registration cards for the defendant's mother and the defendant's sister, Maria Breyer, state that the defendant's mother was born on December 23, 1897, in Neuwalddorf.

32. The three *Deutsche Partei* cards for the defendant's family have no title at the top of the cards to suggest any official use.

33. All the information contained on the *Deutsche Partei* registration cards is consistent as to the background of the defendant's

family. There is no information on one card that is not on another card. This consistency strongly suggests that the cards were prepared from one source of information.

34. There are no signatures or dates on any of the three *Deutsche Partei* registration cards for the defendant's family. The lack of signatures makes it impossible to ascertain who prepared the cards or whether the defendant and his family reviewed the information on the cards.

35. The Registration at the Police Registration Authority in Pirk, Germany for the defendant's family states that the defendant's father, mother, sister and brother were all born in Neuwalddorf. The registration form was signed by the defendant's father on August 9, 1945.

36. The Pirk police registration form only contains one vertical entry for the place of birth and would seem to apply to all the people on the form. However, the writing for this entry is different from the signature of the defendant's father and could be interpreted as only applying to the defendant's father.

37. When the defendant's mother was born, Pennsylvania required that all births be registered by the Act of 1860.

38. The annual report of the Division of Vital Statistics for the year 1906 which was prepared in Philadelphia on January 12, 1907 by the Chief of the Bureau of Health, states that it believed that only 90% of the actual number of births were registered. This report concerns a year that is nine years after the birth of the defendant's mother.

39. The annual report of the Division of Vital Statistics for the year 1909, which was prepared in Philadelphia on January 1, 1910 by the Chief of the Bureau of Health, states that physicians were being prosecuted for failure to properly register births. This enforcement brought about the reporting of 2200 belated births. The court notes that this enforcement concerns a year that is twelve years after the birth of the defendant's mother.

40. Even if the court assumes that 90% of the births registered in 1897, this does not eliminate the possibility that defendant's mother was among the 10% of births that were not reported.

41. The secondary evidence relating to the birthplace of the defendant's mother proves that she was born in the United States on December 23, 1897. In particular, the Bethany Lutheran baptismal records for both the defendant's mother and her sister (*See* ¶¶ 11–14), along with the 1930 Czechoslovak census (*See* ¶ 14) weigh strongly in favor of this finding. The post war documents signed by the defendant's mother also weigh in favor of this finding. (*See* ¶¶ 16–19, 21). Moreover, even though some of the reputation evidence presented may be self-serving, when it is coupled with the other evidence it weighs in favor of finding that the defendant's mother was born in the United States. (*See* ¶¶ 22–29).

42. While the government has produced some evidence which contradicts the finding that Katharina Susanna Breyer was born in the United States, its evidence is far from conclusive and has many weaknesses. (*See* ¶¶ 30–41).

## III. *CONCLUSIONS OF LAW*

The court's conclusions of law are as follows:

### (a) *Defendant's Mother's Birthplace*

■ 43. The defendant must prove that his mother was born in the United States by a preponderance of the evidence. *See, United States v. Ghaloub*, 385 F.2d 567, 570 (2d Cir.1966); *DeVargas v. Brownell*, 251 F.2d 869 (5th Cir.1958); *Delmore v. Brownell*, 236 F.2d 598 (3d Cir.1956).

■ 44. The absence of an official birth record is not decisive as to whether a person is born in the United States because other proof can be adduced to establish this claim. *See, Liacakos v. Kennedy*, 195 F.Supp. 630 (D.D.C.1961); 4 Gordon & Mailman, *Immigration Law and Practice* § 99.02[1][b].

■ 45. In the absence of a contemporaneous official record of birth, secondary evidence can establish a person's birthplace. *See* 4 Gordon & Mailman, *Immigration Law and Practice* § 99.02[1][e].

46. From the secondary evidence produced at trial, the defendant has proven by a preponderance of the evidence that his mother, Katharina Susanna Breyer, was born in the United States of America on December 23, 1897.

47. Under the Fourteenth Amendment to the United States Constitution, "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State, wherein they reside."

48. The court finds that since the defendant's mother was born in the United States, she was a United States citizen by birth.

(b) *Remedy for Unconstitutionality of Section 1993*

49. The court has previously found that Section 1993 of the Revised Statute of 1874, as it applied to the defendant on the date of his birth in 1925, was unconstitutional as a violation of the equal protection component of the Fifth Amendment's due process clause since United States citizen mothers were not included in the benefits conferred by the statute. When the defendant was born, Section 1993 awarded United States citizenship to the foreign-born offspring of United States citizen fathers but not to United ed States citizen mothers. *See, United States v. Breyer*, 829 F.Supp. 773 (E.D.Pa. 1993).

50. A court can remedy a constitutionally underinclusive scheme either by declaring the statute a nullity and ordering that the benefits not be extended to the members of the class intended to benefit or by extending the coverage of the statute to include those who are aggrieved by the exclusion. *See, Heckler v. Matthews*, 465 U.S. 728, 738, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984); *Welsh v. United States*, 398 U.S. 333, 361, 90 S.Ct. 1792, 1807–08, 26 L.Ed.2d 308 (1970).

51. The court finds that the proper remedy for Section 1993's constitutional defect is to include United States citizen mothers under the statute so that their foreign-born offspring are awarded citizenship. To hold otherwise and remedy Section 1993 by declaring it a nullity would involve stripping citizenship from foreign-born offspring of male citizens who have enjoyed that citizenship for decades. Such a result is impossible to countenance.

52. The government urges that any remedy fashioned by the court be nonretroactive and only apply to future cases.

53. Retroactivity is "overwhelmingly the norm." *James B. Bean Distilling Co. v. Georgia*, 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991). There is a "normal rule of retroactive application." *Harper v. Virginia Dept. of Taxation*, —— U.S. ——, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993).

54. In order for the remedy to be nonretroactive, the court must consider these factors: (1) whether its decision establishes a new principle of law, either by overruling clear past precedent on which the litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) after reviewing the prior history of the rule in question, its purpose and its effect, whether the retrospective operation of the rule will retard its operation; (3) whether retroactivity will produce substantial inequitable results. *See, Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–107, 92 S.Ct. 349, 355–356, 30 L.Ed.2d 296 (1971).

55. After reviewing the three *Chevron* factors, the court rejects the government's position of nonretroactivity and finds that the remedy of inclusion of United States mothers should be applied retroactively.

(a) Clearly, the court's decision that Section 1993 is unconstitutional establishes a new principle of law since the decision involved an issue of first impression within the Third Circuit. However, it is equally clear that this resolution of the issue was clearly foreshadowed. Thus, the first *Chevron* factor favors a nonretroactive application of Section 1993's remedy, but only slightly.

(b) The retroactive application of Section 1993's remedy of including mothers will promote, rather than retard, the principles of equal protection of the law. When the court declared Section 1993 unconstitutional, it examined the history and purpose of the statute and found no legitimate and bona fide

reason existed to justify the statute's gender discrimination. By retroactively applying Section 1993's remedy of inclusion to the defendant, the court would be promoting the prohibition against gender discrimination. Thus, the second *Chevron* factor favors the retroactive application of Section 1993's remedy.

(c) The retroactive application of including mothers under the coverage of Section 1993 will not produce substantially inequitable results since foreign-born offspring of United States fathers born before 1934 will retain their United States citizenship. Thus, the third *Chevron* factor also favors the retroactive application of Section 1993's remedy.

56. The court concludes that the remedy for the unconstitutionality of Section 1993 is to retroactively include United States mothers under the statute so that their foreign-born offspring that were born before 1934 would be United States citizens.

(c) *Defendant's Citizenship by Birth Defense*

■ 57. The court declines the government's request to treat the defendant's affirmative defense of citizenship by birth as a permissive counterclaim under Rule 13(b) of the Federal Rules of Civil Procedure because the parties did not present evidence or argument on the issues of whether the defendant's mother was still a United States citizen when the defendant was born and whether the defendant was still a United States citizen when he entered this country.

58. A person seeking a declaration of citizenship may·apply pursuant to Section 341(a) of the Immigration and Naturalization Act, 8 U.S.C. § 1452(a), for a certificate of citizenship from the United States Attorney General based upon statutory authority.

■ 59. A party must have exhausted his or her administrative remedies before a federal district court can issue a declaration of United States nationality or citizenship pursuant to 8 U.S.C. § 1503(a). *See Whitehead v. Haig,* 794 F.2d 115 (3d Cir.1986); *Linzalone v. Dulles,* 120 F.Supp. 107 (S.D.N.Y.1954).

■ 60. The defendant has not exhausted his administrative remedies since he is currently appealing to the Administrative Appeals Unit of the Immigration and Nationalization Service ("INS") an adverse decision by the District Director of the Philadelphia INS that denied his application for a certificate of citizenship.

61. The court will abstain from resolving the issue of defendant's citizenship by birth so that he can properly exhaust his administrative remedies.

(d) *Defendant's Naturalization Certificate*

62. The government previously prevailed on counts I and II of its complaint because the defendant's citizenship was illegally procured by his failure to comply with the statutory requirements for naturalization. *See, United States v. Breyer,* 829 F.Supp. 773 (E.D.Pa.1993).

■ 63. The defendant's certificate of naturalization must be revoked since his citizenship by that means was illegally procured. 8 U.S.C. § 1451(a).

■ 64. Assuming, *arguendo,* that defendant is ultimately declared a citizen by birth, his certificate of naturalization is an extraneous document and the revocation of this document will have no effect on his standing as a United States citizen.

An appropriate order follows.

### ORDER

**AND NOW,** this 20th day of December, 1993, based on the foregoing findings of fact and conclusions of law, IT IS **HEREBY ORDERED** that:

1. Defendant procured his Certificate of Naturalization illegally.

2. The November 7, 1957 order of the United States District Court for the Eastern District of Pennsylvania admitting defendant to United States citizenship **IS REVOKED AND SET ASIDE.**

3. Defendant's Certificate of Naturalization No. 7992538 **IS HEREBY CANCELED** and defendant shall surrender Certificate of Naturalization to the United States Attorney

for the Eastern District of Pennsylvania within sixty (60) days of the date of this order.

4. This order shall not prejudice the defendant's right to pursue his claim of citizenship by birth through the appropriate administrative channels.