Don McGUIRE, Appellant,

v.

COLUMBIA BROADCASTING SYSTEM, INC., Columbia Broadcasting System Films, Inc., and General Foods, Appellees.

No. 21643.

United States Court of Appeals Ninth Circuit.

Sept. 5, 1968.

Thomas R. Sheridan (argued), of Simon, Sheridan, Murphy, Thornton & Medvene, Los Angeles, Cal., for appellant.

Philip K. Verleger (argued), of McCutchen, Black, Verleger & Shea, O'Melveny & Myers, Los Angeles, Cal., Kendall M. Cole, John W. Kuhnemund, White Plains, N. Y., for appellees.

Before BARNES and JERTBERG, Circuit Judges, and *PECKHAM, District Judge.

PECKHAM, District Judge:

This is an appeal from a summary judgment in favor of the appellee (General Foods) which is one of three named defendants in a private antitrust action.[1]

---

* Hon. Robert F. Peckham, United States District Judge, for the Northern District of California, sitting by designation.

1. This case has been before this Court previously, on November 2, 1966, at which time the appeal was dismissed as not

The appellant Don McGuire (hereinafter McGuire) an independent writer, producer and director of television shows and series, filed a treble-damage antitrust action which alleges violations of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2) and Section 3 of the Clayton Act (15 U.S.C. § 14), and names as defendants, Columbia Broadcasting System, Inc., (hereinafter CBS), Columbia Broadcasting Films, Inc., (hereinafter CBS Films), and appellee General Foods.[2]

In the spring and summer of 1964, McGuire was requested by General Foods to make two pilot television films for possible use in the 1965–1966 prime time television season. (Prime time is the three and one-half hours between 7:30 and 11:00 P.M. each evening, seven days a week, excluding the summer season). General Foods, a Delaware Corporation, markets throughout the United States and many foreign countries a diversified line of packaged goods and grocery products, and as part of its several million dollar a year advertising program sponsors television series which are exhibited on the CBS television network, consisting of five wholly owned stations and two hundred affiliates. The two pilots that McGuire was requested to make were but two of eight separate pilots that General Foods had committed itself to finance at a cost of more than $800,000.00, with the expectation that one or more of them might prove acceptable for use in the 1965–1966 season. One of McGuire's pilot television films, "A Man Named McGhee" (hereinafter "McGhee") was selected by General Foods and its advertising agencies as being the best of the eight, and McGuire was told that conditioned upon network approval, General Foods intended to pick up the option, and sponsor "McGhee" during the oncoming season. Thereafter, in January of 1965, the "McGhee" pilot was shown to Mr. James Aubrey of the CBS television network; and although he was aware that it was the first choice of General Foods, nonetheless, the show was rejected, and in its place two CBS film series, "Hogan's Heroes" and "Country Cousins" were eventually selected as the new series to be sponsored by General Foods.

In his complaint McGuire alleges in part that beginning around 1960, the defendant CBS adopted and started to put into effect a policy and a course of action whereby it would not exhibit television shows or series over its network during prime time unless it had a financial interest in and control over the show or series; that this policy was effectuated by having national television advertisers sponsor only television shows and series produced by CBS' wholly owned subsidiary, CBS Films; that each year for the past five years the Defendant CBS has increased its financial control of the percentage of shows or series so exhibited so that for the 1965–1966 tele-

---

being a final order. On December 20, 1966, at the request of the appellant, the order was amended to include an express determination that there was no just reason for delay (pursuant to Rule 54(b) F.R.Civ.P.) and hence, is now properly before this Court as a final judgment.

2. More specifically, the alleged charges are that General Foods:

(a) Combined and conspired to restrain interstate trade or commerce in prime time television shows and series by agreeing to boycott and boycotting from sponsorship and exhibition during prime time on network television any television show or series that were independently produced, owned or controlled in violation of Section 1 of the Sherman Act;

(b) Unlawfully monopolized, attempted to monopolize and conspired to monopolize the interstate and foreign commerce of television shows and series to be exhibited on prime time on the CBS television network in violation of the Section 2 of the Sherman Act;

(c) Entered into exclusive dealing contracts with CBS by which General Foods agreed not to sponsor television shows or series during prime time on any national television network other than the CBS television network, and additionally participated in a forbidden tying arrangment in violation of Section 3 of the Clayton Act.

vision broadcast year CBS had a financial interest in virtually every show exhibited on its network during prime time.

As a result of this alleged course of action, McGuire charged the defendants, CBS, CBS Films, and appellee General Foods, and the unnamed co-conspirators [3] with the previously enumerated antitrust violations.

A motion for summary judgment was filed by General Foods and supported by affidavits. In opposition thereto McGuire filed affidavits and referred to CBS responses to his interrogatories. After a hearing by the Court the motion for summary judgment was granted and an appeal was filed, McGuire complaining that there were genuine issues of fact as to each of the claimed antitrust violations and that the Court erred in ruling that no oral testimony be allowed at the hearing on the summary judgment motion. We do not agree and affirm.

██ Rule 56(e) F.R.C.P. provides that "when a motion for summary judgment is made and supported * * * an adverse party may not rest upon the allegations or denials of his pleading, but his response * * * must set forth specific facts showing that there is a genuine issue for trial." However, the showing of a "genuine issue for trial" is predicated upon the existence of a legal theory which remains viable under the asserted version of the facts, and which would entitle the party opposing the motion (assuming his version to be true) to a judgment as a matter of law. The question to be resolved is whether there is "sufficient evidence supporting the claimed factual dispute * * * to require a jury or judge to resolve the parties' differing versions of the truth at trial", First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569, 592.

██ McGuire's contention that there is a genuine issue of fact as to the alleged violations of the Sherman Act necessitates evidence that would substantiate an inference of a combination or conspiracy. Although much of McGuire's affidavits consist of inadmissible hearsay, not competent under Rule 56(e), F.R. C.P., nonetheless a careful examination of the affidavits in their entirety does not supply the requisite evidence to defeat the motion for summary judgment. From appellant's own affidavits it appears that General Foods selected McGuire's pilot "as the number one choice", and thereafter attempted to persuade CBS to accept it. Upon the initial rejection of the pilot by CBS, a further meeting with CBS was set up in order to again try to convince them to accept the show. Prior to this meeting, the appellant's representative, Abe Lastfogel, met with the representatives of General Foods and its advertising agencies, and indicated in his affidavit that General Foods, with all of its tremendous buying power at CBS, was attempting to persuade CBS to accept McGuire's pilot film. This effort on the part of General Foods appears to contradict any theory of boycott or attempted boycott, and supports rather, an inference of co-operation in a mutual attempt to gain acceptance of the pilot by CBS. Moreover, the affidavits of General Foods provide legitimate reasons for its acceptance of the CBS Film television offering in the place of McGuire's pilot. General Food's affidavits indicate that James Aubrey of CBS declined to run "McGhee" at times during which he felt he must use stronger shows to compete against the other major network offerings. Further he made it clear that since 9:30 Monday nights was a traditional General Food spot, any show that General Foods wanted, including "McGhee", could be shown at that time. However, while

---

3. The 200 non-owned television stations throughout the United States that are affiliated with CBS and its five wholly owned television stations, making up the CBS television network, are named as co-conspirators but not as defendants.

The national television advertisers who have a contractual relationship with CBS, whereby they advertise their products on the CBS television network during prime time, are named as co-conspirators but not named as defendants.

General Foods originally planned to schedule fifteen commercial minutes[4] during prime time hours, internal considerations dictated a reduction to a maximum of twelve commercial minutes. Consequently, the opportunity to place "McGhee" in the 9:30 slot on Monday was declined to comply with the twelve minute limit. A further indication that General Foods was not participating in a boycott is evidenced by the fact that CBS exhibits two other independent shows for General Foods, namely, the "Andy Griffith Show" and "Gomer Pyle". Therefore, since there is no evidence of probative value in the affidavits to support an inference of conspiracy to boycott or monopolize, appellant is forced to rely upon the allegations of conspiracy found in the verified complaint. But Rule 56(e), Fed.R.Civ.P., precludes such reliance.

As stated by the Court in *Cities Service*, supra, 391 U.S. p. 290, 88 S.Ct. p. 1593, 20 L.Ed.2d p. 593.

> "While we recognize the importance of preserving litigants' rights to a trial on their claims, we are not prepared to extend those rights to the point of requiring that anyone who files an antitrust complaint setting forth a valid cause of action be entitled to a full-dress trial notwithstanding the absence of any significant probative evidence tending to support the complaint."

■ McGuire's next contention is that there is a genuine issue of fact as to whether General Foods has violated Section 3 of the Clayton Act under either a theory of an exclusive dealing contract or an unlawful tying agreement.

Section 3 of the Clayton Act (15 U.S.C. § 14) provides in pertinent part as follows:

> "It shall be unlawful for any person * * * to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities, * * * for use, consumption, or resale within the United States, * * * or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

The language of the statute defines liability in terms of a person who makes a sale or contracts for sale and nowhere provides for liability of the buyer. Here, General Foods is not the seller, and consequently no cause of action is created against it. While no case which holds to this effect has been drawn to our attention, the language of the statute seems plain. A similar interpretation of Section 7 of the Clayton Act (15 U.S.C. § 18) was made in Dailey v. Quality School Plan, Inc., 380 F.2d 484, (5th Cir. 1967) where the Court held that Section 7 forbidding certain acquisitions applied only to an acquiring corporation and not to the corporation being acquired.

■ Finally, McGuire claims that the trial court erroneously precluded the use of oral testimony at the hearing on the motion of summary judgment.

Although discovery consisted of a comprehensive set of interrogatories served upon the Defendant CBS and the latter's responses, absolutely no discovery has been conducted by McGuire in regard to General Foods, at the time of the latter's filing the motion for summary judgment. At the first hearing on this motion, counsel for McGuire agreed to " * * * hold off filing interrogatories on defendant General Foods until after the Court

---

4. Network television time is planned on the basis of advertising minutes. Three advertising or commercial minutes are equal to one-half hour show during the hours 7:30 to 11:00 p.m.

hears this motion for summary judgment." No application was ever made by McGuire to modify the order previously consented to which prevented further discovery against General Foods, nor was any effort made to invoke Rule 56(f) F.R.C.P. for limited discovery. Nor was there any postponement of the hearing requested by McGuire for the purpose of deposing these two witnesses. Instead, McGuire attempted to subpoena two of General Food's affiants for the purpose of seeking to introduce oral testimony at the hearing on the motion for summary judgment; however, the Court quashed the two subpoenas. Rule 56 F.R.C.P. is silent as to the taking of oral testimony at a hearing on a motion for summary judgment, but Rule 43(e) F.R.C.P. clearly states that "the Court *may* direct that the matter (of the motion) be heard wholly or partly on oral testimony * * *". (Emphasis added). Accordingly, under these circumstances the order quashing the subpoenas was not an abuse of the Court's discretion.

For the foregoing reasons we decide that the motion for summary judgment was properly granted and therefore affirm.