**NEW PLACES, INC., Appellant,**

v.

**COMMUNICATIONS WORKERS OF AMERICA, INC., Appellee.**

**No. 91–CV–1506.**

District of Columbia Court of Appeals.

Argued Dec. 16, 1992.

Decided Jan. 15, 1993.

William R. Voltz, Washington, DC, for appellant.

Stephen H. Abraham, with whom Richard W. Luchs, Washington, DC, was on the brief, for appellee.

Before ROGERS, Chief Judge, and FARRELL and KING, Associate Judges.

FARRELL, Associate Judge:

This is an appeal from the grant of summary judgment in favor of appellee-landlord in its suit for possession of commercial real estate and a money judgment for rent due. We affirm in part and reverse in part, concluding that there are disputed issues of material fact relating to whether appellant, the tenant, was charged for a *pro rata* share of real estate taxes and operating expenses attributable to property not covered by the lease.

I.

The parties entered into an agreement in January 1985 whereby appellant, New Places, Inc., rented office space from appellee, Communication Workers of America (CWA). As pertinent here, the agreement provided (in section 1) that CWA was leasing to New Places "the space described as Suite # 407; 1,588 square feet (hereinafter referred to as the 'demised premises' or 'premises'), as shown on the attached drawing, in the building at 1925 K Street, N.W.," for a period of ten years "at the total term basic rental" of $341,420.00.[1] An addendum made the rent "payable in advance ... in equal monthly installments" of $2,382.00 during the first five years of the lease, and $3,308.33 during the second five-year term. Section 2 obligated New Places to pay

> each month, as additional rental to the basic monthly rental[,] ... one-twelfth (1/12th) of Lessee's proportionate share of any increase in Lessor's cost of operating and maintaining said building for the fiscal year of Lessor ending each preceding [December 31] over the cost of operating

1. No "attached drawing" is part of any of the lease copies appearing in the record on appeal. Nor was any such attachment referred to by the parties below.

and maintaining said building for the base year.... Lessee's proportionate share, for purposes of this Section 2, is hereby stipulated to be One and 24/hundredths percent (1.24%).

Similarly, New Places agreed to pay CWA, "as further additional rent, Lessee's aforesaid proportionate share of any increase in annual real estate taxes and assessments ... levied or payable during the term hereof on or for Lessor's land and/or improvements thereon, that are over and above said Impositions for the 'Base Tax Year'...."

In May 1991, CWA filed an amended complaint for possession of the premises alleging that New Places had failed to pay rent amounting to $28,331.64 between December 1 and June 1, 1989. In its answer and counterclaim, New Places denied the debt and alleged that CWA had wrongfully charged and received monies from New Places "by way of fraudulent transactions with misrepresentations to the Defendant." Specifically, New Places alleged that, although the lease agreement provided for the rental of 1,588 square feet, New Places had since discovered (through its own measurements and those of an architect) that the actual space was 1,344 square feet, a difference of 244 square feet of which CWA knew or should have known in leasing the premises. New Places also alleged that, contrary to the lease requirement that it pay real estate taxes proportionate to its rental space at 1925 K Street, CWA had since petitioned the District of Columbia to combine the K Street lot with "another building" located at 1015 20th Street for tax purposes and thereafter had begun charging New Places for real estate taxes attributable to both properties. The counterclaim appeared to allege similar overcharges for operating expenses covering both properties.

The parties conducted discovery, including the deposition of Henry Chapman, Vice–President of the Commercial Brokerage Division of Shannon & Luchs, the realtor which had drafted the lease agreement in question. Although Chapman was not "entirely sure" he had been involved in drafting this lease, the parties pressed him as to the meaning of the 1,588 square feet set forth in the lease, specifically whether the rent was computed on a "dollars ... per square foot basis." He acknowledged that it was. He explained further, however, that square feet normally meant "rentable" square feet, which includes "an add-on factor for core [or 'common area space'] as defined by the Association of Realtors," as distinct from "usable square feet [which] includes space in between walls" of the offices leased. Chapman had been with Shannon & Luchs for seven years, and never in that time had he "done a lease that has a square footage number that's a usable number. It's always the rentable number that's put in leases...." Peter Larson, who (with John Quinn) had represented CWA in negotiating this lease, had confirmed to Chapman that space in the 1925 K Street building "always [had] been leased on a rentable basis." Although Chapman could not tell from the lease itself "how much of the space ... included in this 1588 [square feet] would be space outside of Suite 407," he explained that normally the total square footage would be a combination of the "core factor" and the usable square feet.

Following discovery, New Places moved for partial summary judgment on the basis of affidavits of individuals (Quinn and Ronald Krouse) who had negotiated the lease in question for CWA; of Michael Van Zant, president of New Places; and of an architect who had measured the interior space of Suite 407 in 1991 and found the "usable area" to consist of 1,344 square feet. Quinn and Krouse acknowledged in their affidavits that the lease had been negotiated on a "dollar per square foot basis," specifically $18 per square foot for the first five years and $25 per square foot for the second five years. Neither affiant, however, stated anything with respect to whether the 1,588 square feet included a "core" or "common area" factor in addition to interior space of the suite. Only Van Zant addressed this issue in his affidavit, stating only that "[t]here was no discussion during any of the negotiations or at the time of signing the lease that any of the square

footage space was for any area outside of suite 407."

CWA in turn moved for summary judgment arguing, with respect to the 1,588 square feet, that New Places had failed to prove fraud or misrepresentation as a matter of law in view of Chapman's testimony explaining that the 1,588 square feet included a core or common area factor in addition to the interior square footage. With respect to the claim of over-charges for taxes and operating costs, CWA argued that 1925 K Street and 1015 20th Street comprised a single building, the Mercury Building, a fact verifiable by exterior observation,[2] confirmed by a written proposal submitted by New Places' agent prior to execution of the lease describing the premises to be leased as "Suite 407, the Mercury Building," and further shown by the 1.24% additional rent New Places was paying as a percentage of the total square footage of the Mercury Building.

The trial judge denied New Places' motion for summary judgment and granted CWA's motion, entering judgment for possession in CWA's favor and for a total of $49,955.22 in rent due and owing through November 30, 1991.

## II.

■ The parties agree on appeal that if New Places were able to prove to a jury that it paid either basic rent[3] or additional rent (a *pro rata* share of real estate taxes or carrying expenses) on property not covered by the terms of the lease, then it would be entitled to an off-set in that amount against the rent due and unpaid. New Places does not otherwise dispute the judgment awarding CWA possession of the premises. The issue therefore is whether summary judgment was properly awarded CWA with respect to both claims of overpayment in New Places' counterclaim.

New Places does not dispute that at trial it would have the burden of proving both these claims by a preponderance of the evidence.[4]

> [A] motion for summary judgment should be granted if (1) taking all reasonable inferences in the light most favorable to the nonmoving party, (2) a reasonable juror, acting reasonably, could not find for the nonmoving party, (3) under the appropriate burden of proof. This test requires the trial judge to view the case propounded by the party opposing the motion for summary judgment and to determine, from that perspective, whether that party's case is adequate. If the facts, construed in a light most favorable to the party opposing the motion, and the inferences from those facts, would not entitle the party opposing the motion to have a favorable jury verdict sustained, then the motion should be granted.

*Nader v. de Toledano*, 408 A.2d 31, 42 (D.C.1979) (footnote and italics deleted), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980). "[T]he moving party bears the burden of proving that no genuine issue as to any material fact exists and that he is entitled to judgment as a matter of law." *Id.* at 48. Once the movant has met that burden, however, the opposing party must set forth by affidavit or in similar sworn fashion "specific facts showing that there is a genuine issue for trial." Rule 56(e), Superior Court Rules of Civil Procedure. In other words,

> [w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.

---

2. On the inside, CWA asserted without apparent dispute, the 1925 K Street and 1015 20th Street premises were joined on at least two floors by hallways.

3. CWA does not dispute for purposes of this appeal that the basic rent was computed on a dollars per square foot basis.

4. CWA makes no argument here that because New Places' counterclaim sounded in fraud or misrepresentation, it would be held to a higher standard of proof at trial. We express no opinion on that issue.

*Hill v. White,* 589 A.2d 918, 923 (D.C.1991) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)) (internal quotation marks omitted).

Applying these standards, we sustain the grant of summary judgment with respect to New Places' claim that 1,588 square feet, as recited in the lease, misrepresented the true number of square feet on which it agreed to pay basic rent. CWA adduced sufficient competent proof in the form of Henry Chapman's testimony to require New Places to come forward with evidence genuinely disputing the manner in which the 1,588 square feet was calculated. Although Chapman could not be certain he had participated in drafting the lease, he had been employed by Shannon & Luchs at the time, and he testified that never in his experience had a commercial lease been drafted limited to "usable" space in the premises leased; rather, an "add-on factor for core" or "common area" was always added to the "space in between walls." The unmistakable import of Chapman's testimony to a jury would be that the 1,588 square feet included such a factor and did not misstate the square footage actually leased. This was enough to require New Places to submit evidence from which a jury rationally—by a preponderance of the evidence—could credit its theory that the space intended by the parties was "usable" square feet, wall-to-wall within Suite 407.

This it failed to do. Although Quinn and Krouse, the negotiators for CWA, admitted in their affidavits that the lease had been drafted on a dollars per square foot basis, neither described how the square footage had been calculated or offered any support for appellant's theory that the intended measurement was usable space.[5] Nor did New Places offer any other affidavits—for example, by Greenhoot, Inc., its agent in the negotiations, or by any qualified expert in commercial lease practices in this area— to support its theory. The sole evidence it submitted was the affidavit of Michael Van Zant, its president, stating that "core" or

"common area" space had not been discussed during the negotiations. But neither Van Zant nor anyone else asserted under oath that usable space was discussed either. For all the documents and testimony of record showed, the parties relied on the standard practice in commercial leasing at the time, and the only evidence of this was Chapman's testimony—uncontradicted—that the standard measure was rentable space.

In sum, on the issue of how the 1,588 square feet was calculated, there is simply an absence of evidence in the record of a "genuine factual issue[ ] that properly can be resolved only by a finder of fact because [it] may be resolved in favor of either party." *Hill v. White,* 589 A.2d at 921 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986)). Summary judgment was appropriate on this issue.

■ We reach a different conclusion, however, with respect to the claimed overcharges for taxes and operating costs. According to the lease, the "premises" leased consisted of "Suite # 407; 1,588 square feet ... in the building at 1925 K Street, N.W. (hereinafter called the 'building')." New Places agreed to pay its proportionate share of the annual increase in CWA's cost of "operating and maintaining said building" over the same cost for the base year, a share "stipulated to be" 1.24%. It agreed to pay the same share of increased real estate taxes "on or for Lessor's land and/or improvements thereon...." CWA contended below that while the Mercury Building had at one time consisted of two structures, these had been combined physically well before the present agreement and merely had separate entrances with different street addresses, the one at 1925 K Street and the other (around the corner) at 1015 20th Street, N.W. Yet CWA conceded that at the time of the agreement the two addresses reflected separate lots on the District of Columbia tax records (58

**5.** In its brief on appeal New Places merely asserts that its *attorney* represented to the trial court that Quinn would "testify that 1,588 square feet was for the space in suite 407 only." This was not a substitute for the evidence required by Rule 56.

and 59 in square 85), on which separate tax bills were issued by the government.[6]

The parties agree that extrinsic evidence could properly be considered in deciding the scope of New Places' obligation for taxes and costs, but disagree as to its significance in this case. CWA, for example, refers to the original written proposal submitted by New Places' agent for the lease of "Suite 407, *The Mercury Building*, 1925 K Street, N.W." (emphasis added). New Places responds that this description is itself ambiguous and that, in any event, the lease agreement itself never mentions the Mercury Building, referring only to 1925 K Street. CWA's stronger argument for summary judgment was that New Places' stipulated share of the taxes and operating costs, 1.24%, made no sense unless derived from the fraction of 1,588 square feet (as numerator) over the total square footage of the Mercury Building, including both addresses. CWA asserted the latter figure to be 126,508 square feet, based upon architect drawings of the complete building submitted by New Places as an exhibit. The percentage derived from this fraction, according to CWA's calculation, was remarkably close to the 1.24% New Places had agreed to pay—and markedly less than the share it would have paid on only a portion (roughly one half) of the Mercury Building.

We conclude that this evidence was insufficient to give judgment to CWA as a matter of law in the face of the contrary evidence cited above, including the express language of the lease defining the "premises" or "building."[7] First, whether the total square footage relied on by CWA was competent evidence is uncertain. CWA itself objected to the "authenticity" of the architect drawings submitted by New Places, and New Places disputed the square footage figures hand-written at the bottom of the respective floor drawings,

noting that it had offered the documents for a different purpose. Furthermore, the agreement itself did not say how the 1.24% figure was arrived at, but merely that it was "stipulated"; and the agreement contained other evidence of allowances (such as a two-month rent abatement) favorable to New Places. Thus, although the issue is a close one as the trial judge recognized, we conclude there are genuine issues of material fact as to the parties intent in stipulating New Places' obligation for taxes and operating costs for the "building" at 1925 K Street. Summary judgment on this claim was improper.[8]

*Judgment Affirmed in Part and Reversed in Part.*

---

6. In 1987, two years after the agreement was executed, the two tax lots were combined into one at the suggestion of the District's taxing authorities.

7. New Places does not contend that it was entitled to summary judgment on this issue but only that it presented enough evidence—chiefly the lease itself—to create a jury-triable dispute as to

the meaning of the "premises" or "building" to which its obligation for taxes and costs extended.

8. CWA asserted additional defenses of waiver and estoppel in answer to New Places' counterclaim. We express no opinion as to the availability of these defenses at trial.