Carroll SMITH, Appellant,

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, et al., Appellees.

No. 91–CV–529.

District of Columbia Court of Appeals.

Argued May 28, 1992.
Decided Sept. 16, 1993.

Vanessa M. Carpenter, with whom Jay M. Berkowitz, Adelphi, MD, was on the brief, for appellant.

Cynthia R. Mabry, Asst. Gen. Counsel, with whom Robert L. Polk, Gen. Counsel, Arnold I. Melnick, Deputy Gen. Counsel, and Gerard J. Stief, Asst. Gen. Counsel, Washington, DC, were on the brief, for appellee WMATA.

Jonathan S. Resnick, Washington, DC, for appellee Restrepo.

Before FARRELL and WAGNER, Associate Judges, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge:

This is an appeal from an order of the Superior Court granting summary judgment in favor of appellees Washington Metropolitan Area Transit Authority (hereinafter "WMATA") and Alfonso Rojas Restrepo in a negligence action brought by appellant Carroll Smith as a result of a motor vehicle accident. In determining whether summary judgment was properly entered against Smith, the principal issue we are called upon to decide is whether, under the 1982 Compulsory/No–Fault Motor Vehicle Insurance Act ("No–Fault Act") (D.C.Code §§ 35–2101 to –2113 (1988 Repl.)), Smith has adequately demonstrated that she meets an exception to the Act's restrictions against tort actions for noneconomic losses. We affirm.

On April 4, 1986, Smith was a passenger aboard a WMATA metro bus when the bus was involved in an accident with a taxicab owned and operated by Restrepo. Smith was injured in the accident and requested, pursuant to the No–Fault Act (D.C.Code § 35–2104 (1988 Repl.)), personal injury protection (PIP) benefits from WMATA for economic losses.[1] Accordingly, WMATA, a self-insurer,[2] paid Smith PIP benefits for medical expenses and loss of work.

On March 18, 1989, Smith brought suit to recover certain noneconomic losses [3] which she contends she is entitled to recover from WMATA under the No–Fault Act. On January 9, 1991, the trial court granted appellees' oral motion for leave to file a motion for summary judgment. In their motion for summary judgment, filed on January 29, 1991, appellees asserted that "WMATA is self-insured against liability for injury to persons," [4] that "[a]t all times material to this action" the No–Fault Act is applicable, that Smith did not incur medical expenses in excess of the medical threshold of Five Thousand dollars,[5] and there was no genuine issue as to material fact pertaining to Smith's claim.[6] Consequently, appellees claimed that they were entitled to summary judgment as a matter of law since Smith elected to receive PIP benefits from WMATA, and thus was prevented from maintaining a tort action for noneconomic losses because she failed to make her *prima facie* case, pursuant to the No–Fault Act, D.C.Code § 35–2105(b) (1988 Repl.), which requires that the injury directly resulted in:

> substantial and medically demonstrable permanent impairment which has significantly affected [her] ability ... to perform ... her professional activities or usual and customary daily activities; or a medically demonstrable impairment that prevents [her] from performing all or substantially all of the material acts and duties which constitute ... her usual and customary daily activities for more than 180 continuous days.

■ Smith, in her opposition to appellees' motion for summary judgment, claimed that it was a question for the jury to determine whether she had provided sufficient evidence that she met the exception. Smith supported her opposition to the mo-

1. D.C.Code § 35–2104, provides, in part, that [a]n applicable insurer shall provide ... for personal injury protection ... for each person covered by insurance for any injury sustained ... by that person as a result of an accident in the District....
The No–Fault Act defines "loss" as "economic detriment incurred as a result of an accident resulting in injury, consisting of and limited to medical and rehabilitation expenses, work loss inclusive of replacement services loss, and death benefits," but "does not include noneconomic loss." D.C.Code § 35–2102(13).

2. Self-insurer "means any person having received a certificate of self-insurance issued by the Mayor pursuant to D.C.Code § 40–478." D.C.Code § 35–2102(26) (1988 Repl.).

3. The No–Fault Act defines noneconomic loss as pain, suffering, inconvenience, physical or mental impairment, and other nonpecuniary damage recoverable under the tort law applicable to injury arising out of the maintenance or use of a motor vehicle. D.C.Code § 35–2102(19) (1988 Repl.).

4. *See supra* note 2.

5. D.C.Code § 35–2105(b)(6) (1988 Repl.); *Monroe v. Foreman,* 540 A.2d 736, 737–38 (D.C.1988).

6. Also, WMATA's motion for summary judgment was supported by its answers to interrogatories on file as permitted by Super.Ct.Civ.R. 56. *See McCoy v. Quadrangle Dev. Corp.,* 470 A.2d 1256, 1258 (D.C.1983).

tion for summary judgment with her answers to interrogatories and an unsigned and unsworn report of her physical examination performed on January 16, 1991. The trial court held a hearing on these issues on April 11, 1991 and, "[u]pon consideration of the [Appellees'] Motion for Summary Judgment and the Memorandum of Points and Authorities in support thereof, [and] Opposition and Argument thereon," issued an order granting appellees' motion. It is from this order that Smith appeals.[7]

### I.

 Both a motion to strike and motion for summary judgment test the legal sufficiency of a cause of action, the former when the pleadings are open, the latter when pleadings are closed. *See Camp v. Chase*, 39 Conn.Supp. 264, 476 A.2d 1087 (1983). In other words, where the pleadings are closed, the motion for summary judgment, supported by verified pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, may be used to test whether the party opposing the motion met the threshold question of law at issue. *See Nader v. de Toledano*, 408 A.2d 31, 42 (D.C.1979), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980); Super.Ct.Civ.R. 56. Where the party opposing the motion fails to meet the burden of demonstrating that she has stated a cause of action, then there is "no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." *Nader, supra*, 408 A.2d at 42.

 In reviewing the grant of the summary judgment, this court must conduct an independent review of the record, *Scrimgeour v. Magazine*, 429 A.2d 187,

188 (D.C.1981), and must view the facts in "the light most favorable to the non-moving party," *Sayan v. Riggs Nat'l Bank of Washington, D.C.*, 544 A.2d 267, 268 (D.C. 1988). After the moving party, here appellees, makes its initial requisite showing, the non-moving party, here Smith, "must set forth specific facts showing that there is a genuine issue for trial," and must demonstrate that a jury or judge is necessary to resolve the disputed fact. Super.Ct.Civ.R. 56(e); *Nader, supra*, 408 A.2d at 42. The requisite "showing of a 'genuine issue for trial' is predicated upon the existence of a legal theory which remains viable under the asserted version of the facts...." *Id.* at 48 (quoting *McGuire v. Columbia Broadcasting Sys., Inc.*, 399 F.2d 902, 905 (9th Cir.1968)). Once movant has made the requisite showing in support of its motion for summary judgment, the non-moving party, in order to make the evidentiary showing that will permit her to advance to trial, must show that she has a plausible ground to maintain the particular cause of action; *i.e.*, she must produce enough evidence to make out a *prima facie* case in support of her claim. *Id.* at 48–49.

### II.

 The No–Fault Act "established a compulsory insurance system for personal injury in which victims of automobile accidents would be compensated irrespective of fault." *Dimond v. District of Columbia*, 253 U.S.App.D.C. 111, 114, 792 F.2d 179, 182 (1986). Under this Act, no-fault personal injury protection benefits paid by his own insurer compensated a victim for economic detriment incurred as a result of an accident.[8] *Id.* at 114–15, 792 F.2d at 182–83. On the other hand, noneconomic loss-

---

**7.** Smith also claims that the trial court erred in granting summary judgment on the issue of noneconomic loss when, on the ground that she had not provided reasonable proof of lost wages, WMATA had yet to pay *all* her economic loss. Economic losses are payable, pursuant to the No–Fault Act (D.C.Code § 35–2104), as PIP benefits irrespective of whether a tort was committed by WMATA against Smith. However, Smith brought the instant *tort action* against appellees and must prove they were "at fault" in

order to recover noneconomic losses after she first demonstrates she meets an exception to the No–Fault Act's restrictions against such tort claims, pursuant to D.C.Code § 35–2105(b). Consequently, Smith's claim for the balance of her "no-fault" economic loss is irrelevant to the instant *tort action* for noneconomic loss and is thus not before us.

**8.** *See supra* note 1.

es[9] could be recovered only by bringing a tort action against the driver "at fault" in an accident, but the No–Fault Act restricted a victims' ability to bring such actions. *See Monroe, supra* note 5, 540 A.2d at 742. It is a threshold question of law for the court to decide whether appellant has met the strict statutory requirements as set forth in the No–Fault Act sufficient to overcome the Act's restrictions against tort actions for noneconomic losses. *Id.*

■■■ WMATA, in support of its summary judgment motion, has met its requisite initial showing that it is self-insured, that the No–Fault Act applies here, and that appellant has not incurred medical expenses in excess of the medical threshold of Five Thousand Dollars; therefore, the burden of proof shifts to Smith. Thus, to defeat a motion for summary judgment, Smith must produce enough evidence through verified pleadings, interrogatories, affidavits, and depositions to demonstrate that she can maintain a cause of action for noneconomic losses under the limitations set forth by the No–Fault Act (D.C.Code § 35–2105(b) (1988 Repl.)). She must show that she suffered a "substantial and medically demonstrable permanent impairment" and/or a "medically demonstrable impairment" that prevented her from "performing all or substantially all of the material acts and duties" of her "usual and customary daily activities for more than 180 continuous days." *Id.*

In our review of the record, however, we conclude that Smith's evidentiary showing is insufficient to maintain a cause of action under the statutory provisions of the No–Fault Act so that WMATA is entitled to summary judgment as a matter of law. In order to try to meet the *substantial permanent* impairment exception of the No–Fault Act's restrictions against tort actions for noneconomic losses, Smith was examined by a doctor on January 16, 1991, almost five years after the accident. However, the report that she submitted to the trial court of this examination was unsigned and unsworn as required by Super.Ct.Civ.R. 56 so it cannot properly be considered. Even assuming, *arguendo*, that this report could be considered, it does not help her claim. Though the report describes her condition as of that date as "permanent" on the ground that "she will continue to have [back] problems from time to time," the described injuries are minor and relieved by aspirin. *See Patrello v. United States*, 757 F.Supp. 216, 223 (S.D.N.Y.1991) (noting that plaintiff's discomfort from her injuries was relieved by aspirin, court affirmed the grant of summary judgment against her because it determined that she did not meet her burden of proving that her injury rose to necessary level of seriousness required by its No–Fault statute).

Thus, in order to defeat the motion, Smith had to meet her burden of demonstrating that she met the substantial permanent impairment exception to the statute's restrictions against tort actions solely on her answers to interrogatories. In her answers we find that Smith still has worked full time, from December 1986 until the present, as a legal secretary where she is "required to perform computer work, filing, and ... administrative duties that require [her] to move around the office a lot" for which she has been paid between $24,500 to $28,090 per year which belies her claim of substantial permanent injuries.

In addition, we also find that appellant's answers to interrogatories are insufficient to show that her injuries from the accident prohibited her from performing *all* or *substantially all* of her duties for 180 continuous days. We consider, just as the court did in *Licari v. Elliott*, 57 N.Y.2d 230, 455 N.Y.S.2d 570, 441 N.E.2d 1088, 1091 (1982), that "substantially all" means what it says, *i.e.*, to "a great extent." There, the court held that although *two* doctors testified on plaintiff's behalf, neither one offered evidence as to the *extent* of the impairment so that there was no line of reasoning by which the jury could have concluded that plaintiff suffered a significant impairment, or that he was prevented from performing substantially all of his usual daily activities

---

**9.** *See supra* note 3.

for the requisite number of continuous days pursuant to its No–Fault statute.[10] *Id.* That court then concluded that "[w]hile there is little doubt that plaintiff suffered discomfort as a result to the accident, the court has no choice but to enforce the legislative mandate and dismiss the complaint when a plaintiff fails to meet the burden of proving the threshold requirement of establishing a prima facie case ... within the meaning of the statute." *Id.* 455 N.Y.S.2d at 575, 441 N.E.2d at 1093. And so it is here. In her answers, appellant states that she curtailed her normal activities, stayed at home in bed a lot, and was able to work only part-time. Without sworn medical affidavits as to the extent of her impairment for 180 continuous days, however, these merely conclusory answers are inadequate to meet the requisite "substantially all" exception to the No–Fault statute.

Therefore, we find that Smith has not provided, through her answers to interrogatories, sufficient evidence to demonstrate that her cause of action remains viable under the exceptions to the No–Fault Act's restrictions against tort actions for noneconomic losses. She failed to make a prima facie showing that she suffered substantial permanent impairment or was virtually incapacitated for 180 continuous days after the accident. Thus, we conclude that the

trial court's grant of summary judgment was appropriate.

*Affirmed.*

WAGNER, Associate Judge, dissenting:

Primarily because I believe that WMATA did not meet its initial burden of production under Super.Ct.Civ.R. 56, I reach a different result. Rule 56 places upon the moving party the initial responsibility of demonstrating the absence of a genuine issue of material fact in dispute and that he or she is entitled to judgment as a matter of law. *New Places, Inc. v. Communications Workers of America, Inc.,* 619 A.2d 73, 75 (D.C.1993); *Graff v. Malawer,* 592 A.2d 1038, 1040 (D.C.1991); *Beard v. Goodyear Tire & Rubber Co.,* 587 A.2d 195, 198 (D.C. 1991); *Nader v. de Toledano,* 408 A.2d 31, 42 (D.C.1979). Only if the movant makes that initial showing will the burden of production shift to the nonmoving party, requiring that party to show "by affidavits or as otherwise provided in [Rule 56], ... specific facts showing that there is a genuine issue for trial." Super.Ct.Civ.R. 56(e); *see also New Places,* 619 A.2d at 75; *Beard,* 587 A.2d at 198. The moving party may discharge that initial burden by demonstrating that the opposing party lacks evidence to support the claim. *Smith v. Union Labor Life Ins. Co.,* 620 A.2d 265, 267 (D.C.1993); *Graff,* 592 A.2d at 1040; *Beard,* 587 A.2d at 198.[1] WMATA at-

---

**10.** The No–Fault statute there has language similar to ours but is actually easier for plaintiff to meet because only ninety days of continuous significant impairment must be shown rather than our requirement of 180 continuous days.

**1.** Exactly what is required to make that showing is the subject of much debate, particularly since the Supreme Court's decision in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Justice Rehnquist, writing the plurality opinion, explains the burden as one requiring the movant to "identify[ ] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." 477 U.S. at 323, 106 S.Ct. at 2553. In a concurring opinion, Justice White indicated that "[i]t is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case [,] ... [i]t is

the defendant's task to negate, if he can, the claimed basis for the suit." *Id.* at 328, 106 S.Ct. at 2555. Justice Brennan, who was joined by Chief Justice Burger and Justice Blackmun in dissenting, expressed the view that if the burden of persuasion at trial is on the nonmoving party, then to meet the required burden of production, the moving party must: (1) "submit affirmative evidence that negates an essential element of the nonmoving party's claim[;]" and (2) "demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* at 331, 106 S.Ct. at 2557. Justice White, who provided the critical fifth vote for remand, noted that Celotex did not dispute that had respondent named a witness to support her claim, then Celotex would have to show that the potential witness' testimony raised no genuine issue of material fact. This approach appears to be consistent with prior cases and practice in this jurisdiction which entailed the moving party ascertaining through pretrial discovery that the

tempted, but in my view, failed to do so in this case.

In order to maintain this action under the Compulsory/No–Fault Motor Vehicle Insurance Act, D.C.Code §§ 35–2101 to –2114 (1988), appellant must show that she meets one of the exceptions set forth in D.C.Code § 35–2105(b). WMATA argued in the trial court that appellant met none of the exceptions. The only exception at issue here is the one requiring a showing of "a medically demonstrable impairment that prevents the victim from performing all or substantially all of the material acts and duties that constitute his or her usual and customary daily activities for more than 180 continuous days." D.C.Code § 35–2105(b)(1). In support of its motion on this issue, WMATA simply asserted that "[p]laintiff had provided no documentation [so] indicating." The record does not support that WMATA ever demanded through the discovery process such proof of that element of her claim. WMATA did request, and appellant provided, "names and addresses of all doctors [she] consulted or who examined or treated [her] since the time of the accident, giving the date of each examination, consultation or treatment." WMATA took no discovery of the witnesses disclosed. Although WMATA inquired about the name and author of any written reports prepared by physicians, it did not request copies of the reports. Appellant apparently voluntarily attached copies of two unsigned reports to her answers to interrogatories [2] which, in fact, do provide some indication that appellant has a "demonstrable medical impairment." [3] Therefore, it does

not aid WMATA in meeting its initial burden of production on summary judgment to show that appellant can produce no evidence that she falls within that part of the exception set forth in D.C.Code § 35–2105(b)(1), upon which she relies. Accordingly, the burden never shifted to appellant to disclose further proof of her claim on that issue. *See New Places, supra,* 619 A.2d at 75.

The record also contains some evidence, by way of interrogatory responses, that appellant's injuries precluded her from performing "all or substantially all of the material acts and duties that constitute [ ] her usual and customary daily activities for more than 180 continuous days," the second requirement of the exception appellant had to meet. According to those responses, prior to the accident, appellant worked five or six days for an average of eight hours per day. They show that she could not work at all the first two weeks after the accident and that she could work only part time (for about three hours per day) for the next seven months. She also stated that for those seven months "I went to work part time, and I completely curtailed all of my normal activities, and stayed at home and in bed a lot because of the strain of working." She described her pain and poor condition during this period. Thus, the evidence provided through appellant's interrogatory responses not only does not show that appellant had no evidence to support her case, it shows that she had a plausible basis to maintain her claim. For these reasons, it is my opinion that WMATA failed to satisfy its initial burden of

witnesses identified by the opposing party could not support the claim before filing a summary judgment motion. Under any of the three burdens identified in *Celotex,* in my view, summary judgment should have been denied in the case before the court.

**2.** The interrogatories also requested the name and address of appellant's family physician and the date and reason for her last visit to him, which appellant provided. Appellant included a request for the names and addresses of all witnesses and the subject matter about which they would testify, including any experts. Appellant stated that the answers would be supplemented prior to trial. The record reflects no motions to

compel the answers prior to disposition by summary judgment.

**3.** The report states, in part, that appellant had "closed head trauma, as well as trauma to the neck, back, right hip, right leg and right femur" when she was seen originally, one month after the accident. It describes the result of an MRI scan of the lumbosacral spine performed less than a year later, when appellant remained symptomatic with mild to moderate bulging discs at various levels. It references a neurological consultation seven months after the MRI scan. The report reflects that appellant's prognosis was fairly poor and that her condition was permanent.

production in moving for summary judgment.