**STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., Appellant/Cross–Appellee,**

**v.**

**Tuan X. HOANG, Appellee/Cross–Appellant.**

**Nos. 95–CV–39, 95–CV–40.**

District of Columbia Court of Appeals.

Argued June 26, 1996.
Decided Sept. 5, 1996.

Kathleen A. Carey, with whom Harold E. Jordan was on the brief, for appellant/cross-appellee.

Scott M. Strickler for appellee/cross-appellant.

Before FARRELL and KING, Associate Judges, and PRYOR, Senior Judge.

FARRELL, Associate Judge:

These consolidated appeals present the primary issue of whether the trial judge correctly reserved to himself the threshold issue of whether plaintiff Hoang met the "medically demonstrable ... impairment" requirements of the No–Fault statute, D.C.Code § 35–2105(b)(1) (1993), thus enabling Hoang to maintain this civil action despite having received PIP (personal injury protection) benefits under the statute. Relying on language in our decisions and his (correct) understanding that § 35–2105(b) was intended as a screening device "to filter out undeserving cases," the trial judge ruled that satisfaction of § 35–2105(b)'s standards presents a threshold issue of law and fact for the judge to decide, not the jury. Defendant State Farm Insurance Co. (State Farm) argues that this misapprehends our decisions and, if accepted, would place this jurisdiction at odds with the great preponderance of case authority interpreting similar provisions of state no-fault statutes. We agree with State Farm and hold that the proper analysis of proof under § 35–2105(b) follows the traditional summary judgment and directed verdict standards. We further hold that the seriousness of Hoang's injuries under § 35–2105(b) presented issues of material fact on which reasonable minds could disagree, thus requiring denial of State Farm's motion for a directed verdict. We reject Hoang's argument on cross-appeal that the trial judge

erroneously removed the issue of punitive damages from the jury.

## I.

This case arose from an automobile accident between Hoang and an uninsured motorist. State Farm, Hoang's insurer, paid him substantial PIP benefits for the injuries suffered in the accident, but after an examination by a physician of its naming, it terminated those benefits and also declined to pay him uninsured motorist benefits. Hoang then filed this civil action against State Farm for breach of contract, seeking punitive damages as well. At the end of Hoang's case, which was tried to a jury, the judge struck the claim for punitive damages. On the basis of Hoang's evidence concerning the nature and extent of his injuries, the judge denied State Farm's motion for a directed verdict, which asserted that the standards of § 35-2105(b)(1) had not been met. In doing so the judge tentatively stated his view that this issue was a preliminary one for the court to resolve. After State Farm's physician testified about Hoang's injuries (State Farm did not contest the fault of the uninsured motorist or causation), State Farm renewed its motion for a directed verdict but argued, in the alternative, that whether or not Hoang's injuries met § 35-2105(b)'s threshold should be left to the jury on disputed facts. The judge ruled otherwise, concluding that the issue was one solely for court resolution as a means "to filter out undeserving cases." He concluded that Hoang had presented sufficient evidence of a medically demonstrable impairment under § 35-2105(b)(1) to permit him to maintain the action for breach of contract against State Farm. The judge acknowledged at one point that this left for jury consideration little more than the issue of compensatory damages:

> [O]nce the determination was made that the provisions of [§ ] 2105 [have] been met and I conclude that the plaintiffs can bring the action, I don't know that there's much left for you to argue.... The jury can consider anew what they make of ... the personal injuries, whether they did or did not occur, and to what severity, to what extent, to what the value is.

The jury returned a verdict for Hoang of $30,000. State Farm's motion for judgment NOV or for a new trial, again arguing that compliance with § 35-2105(b) was a jury issue on disputed evidence, was denied.

## II.

D.C.Code § 35-2105(b) provides:

> A victim who elects to receive personal injury protection benefits may maintain a civil action based on liability of another person only if:

> (1) The injury directly results [a] in substantial permanent scarring or disfigurement, [b] substantial and medically demonstrable permanent impairment which has significantly affected the ability of the victim to perform his or her professional activities or usual and customary daily activities, or [c] a medically demonstrable impairment that prevents the victim from performing all or substantially all of the material acts and duties that constitute his or her usual and customary daily activities for more than 180 continuous days; or

> (2) The medical and rehabilitation expenses of a victim or work loss of a victim exceeds the amount of personal injury protection benefits available.

The parties agree that only § 35-2105(b)(1) is at issue in this case, and then only the subprovisions we have lettered "[b]" and "[c]." State Farm first challenges the trial judge's determination that this threshold issue is for the court alone to decide. Hoang defends that ruling by arguing that compliance with the statutory threshold amounts to an issue of subject matter jurisdiction, which the court decides upon its own independent review of the evidence. *See, e.g., Matthews v. Automated Business Sys. & Servs., Inc.,* 558 A.2d 1175, 1179 (D.C.1989).

Hoang points first of all to the language of the statute, which conditions the right to "maintain a civil action" upon satisfaction of one of the tests of (b)(1) or (2). But the quoted language will not carry the weight Hoang gives it. A threshold *jury* determination that none of the tests has been met, no less than a court determination, would bar the plaintiff from maintaining suit against (in

the typical case) another driver for negligence. The statute of limitations, D.C.Code §§ 12–301 and –302 (1995), operates similarly as a condition on "the right to maintain [an] action," yet that issue is submitted to the jury on disputed issues of fact. *See, e.g., Burns v. Bell,* 409 A.2d 614 (D.C.1979). Nor has Hoang cited anything in the legislative history of the No–Fault statute suggesting the D.C. Council considered the issue one of "subject matter jurisdiction" and meant to withhold factual disputes regarding satisfaction of § 35–2105(b) from the jury. That history, as our own examination confirms, sheds no light on the issue one way or the other.

Hoang instead relies upon language from two of this court's decisions which at first look appears to support his contention. In *Smith v. Washington Metro. Area Transit Auth.,* 631 A.2d 387 (D.C.1993), the court, in referring to the No–Fault Act's restrictions on suit for personal injuries, stated: "It is a threshold question of law for the court to decide whether appellant has met the strict statutory requirements as set forth in the No–Fault Act sufficient to overcome the Act's restrictions against tort actions for noneconomic losses." *Id.* at 391. For this point we cited *Monroe v. Foreman,* 540 A.2d 736, 742 (D.C.1988). All *Monroe* said on the subject, however, was that "[t]he No–Fault Act permits a person who is eligible for PIP benefits to recover noneconomic losses in a tort action only when certain *statutory thresholds* have been met." *Id.* (emphasis added). We said nothing there about who decides whether they have been met. Nevertheless, the sentence from *Smith* appeared once again in *Musa v. Continental Ins. Co.,* 644 A.2d 999 (D.C.1994). There, as in *Smith,* we affirmed the trial court's grant of summary judgment to the defendant on the ground that the plaintiff had not overcome the barrier posed by § 35–2105(b). After holding "as a matter of law" that he had not done so, we addressed "Musa's invitation to treat the statutory thresholds set out in section 35–2105(b)(1) as issues of fact requiring jury resolution." *Id.* at 1003. We rejected the invitation, citing as dispositive the sentence from *Smith. Id.*

The cited language in the two cases would seem to support Hoang's argument decisively, were it not for the context in which we used it each time. Both decisions, as mentioned, concerned appeals from the grant of summary judgment to defendants on the ground that the plaintiff had not satisfied the threshold requirements of § 35–2105(b). Strictly speaking, language in either opinion suggesting that *if* a plaintiff surmounts summary judgment, the threshold issue remains one for court determination, would therefore have been dictum. But we do not think the court intended to decide the issue in either case. In *Smith* the trial judge had rejected the plaintiff's claim that fulfillment of § 35–2105(b) "was a question for the jury to determine," not because this could never be a jury issue, but because the plaintiff had not met the standards for opposing summary judgment. 631 A.2d at 389–90. We began by reviewing those standards, including the rule that:

> Once movant has made the requisite showing in support of its motion for summary judgment, the non-moving party, in order to make the evidentiary showing that will permit her to advance to trial, must show that she has a plausible ground to maintain the particular cause of action; *i.e.,* she must produce enough evidence to make out a *prima facie* case in support of her claim.

*Id.* at 390. We held, in accordance with the trial judge's ruling, that the weakness of the plaintiff's "evidentiary showing . . . entitled [WMATA] to summary judgment as a matter of law." *Id.* at 391. With respect to her claim, for example, that her injuries kept her from performing "all or substantially all" of her duties for 180 continuous days, we relied on the decision of the New York Court of Appeals in *Licari v. Elliott,* 57 N.Y.2d 230, 455 N.Y.S.2d 570, 441 N.E.2d 1088 (1982), stating:

> There, the court held that although two doctors testified on plaintiff's behalf, neither one offered evidence as to the extent of the impairment so that there was no line of reasoning by which *the jury* could have concluded that plaintiff suffered a significant impairment, or that he was prevented from performing substantially all of his usual daily activities for the requisite num-

ber of continuous days pursuant to its No-Fault statute. That court then concluded that "[w]hile there is little doubt that plaintiff suffered discomfort as a result [of] the accident, the court has no choice but to enforce the legislative mandate and dismiss the complaint when a plaintiff fails to meet the burden of proving the threshold requirement of establishing a prima facie case ... within the meaning of the statute."

*Id.* at 391–92 (emphasis added; original italics, citations, and footnote omitted). We concluded in *Smith:* "And so it is here ... [Plaintiff] failed to make a prima facie showing that she suffered substantial permanent impairment or was virtually incapacitated for 180 continuous days after the accident." *Id.* at 392.

*Musa* likewise upheld a ruling that the plaintiff had not "shown a genuine issue of fact that he is prevented from performing all or substantially all of his customary activities" as a result of the accident. 644 A.2d at 1001. We conceded that the plaintiff's evidence "would, at least arguably, enable *reasonable jurors* to reach conflicting conclusions as to the severity of [his] injuries," *id.* at 1002 n. 6 (emphasis added); but we held, "as a matter of law," *id.* at 1003, "that the undisputed facts establish that [his] injuries did not 'significantly affect' his activities." *Id.* at 1002. Only in this context did we go on to refuse to "treat the statutory thresholds ... as issues of fact requiring jury resolution." *Id.* at 1003 (citing *Smith*). In *Licari, supra,* on which *Smith* relied, the plaintiff had argued that, since the No-Fault statute was in derogation of the common law right to sue for personal injuries, "the question of whether [the plaintiff] suffered a serious injury [under New York's statutory threshold] is *always* a fact question for the jury." 455 N.Y.S.2d at 573, 441 N.E.2d at 1091 (emphasis added). The court held, to the contrary, that the legislative intent was to deny plaintiffs an "unfettered right to sue for injuries" in automobile cases, and that "[i]f it can be said, as a matter of law, that plaintiff suffered no serious injury within the meaning of [the statutory threshold], then plaintiff has no claim to assert and there is nothing for the jury to decide." *Id.* 455

N.Y.S.2d at 574, 441 N.E.2d at 1092. Significantly, in *Musa* too we concluded our opinion by rejecting the argument that application of summary judgment to the § 35–2105(b) issues "would amount to an impermissible abridgement of a common law right." 644 A.2d at 1004.

In our view, the language Hoang relies on from *Smith* and *Musa,* in context, is most naturally read as rejecting any sort of heightened standard *beyond* that supplied by summary judgment before the statutory threshold issues can be withheld from the jury. In effect those decisions rejected the argument made in *Licari* that allowing any adverse judgment "as a matter of law" on these threshold factual issues is too great an impairment of the common law right to sue. But that conclusion is very different from a holding that the statutory issues are never jury triable. In *DeFreese v. Grau,* 192 A.D.2d 1019, 597 N.Y.S.2d 230 (1993), the Appellate Division summarized New York law by holding that the threshold issues under the No-Fault statute become a jury question

> whenever the court finds that (1) the plaintiff has made a prima facie showing that his or her injuries fall within one of the categories of serious injury outlined in [the statute], and (2) the evidence presented at trial is such that reasonable persons could differ with regard to whether the plaintiff's injuries fall within one of those categories....

*Id.* 597 N.Y.S.2d at 231. We choose to follow this standard, which accords best with the actual holdings of *Smith* and *Musa,* as well as with the overwhelming weight of case authority interpreting similar state provisions.

In *Oswin v. Shaw,* 129 N.J. 290, 609 A.2d 415 (1992), for example, the Supreme Court of New Jersey rejected a lower appellate court's holding that "the trial judge is to decide all issues regarding whether a plaintiff's injury is 'serious' [under the statutory threshold], including disputed issues of fact." *Id.* 609 A.2d at 419. Instead the Supreme Court read the state's statute as incorporating "the summary-judgment model," under

which "the court decides whether the injury alleged would, if proven, meet the requirements of one of the verbal-threshold categories,[1] and the jury decides factual disputes about the nature and extent of the plaintiff's injuries." *Id.* 609 A.2d at 417. Case law elsewhere is to the same effect. *See Di-Franco v. Pickard,* 427 Mich. 32, 398 N.W.2d 896, 915 (1986) ("The question whether the plaintiff suffered a serious impairment of body function must be submitted to the trier of fact whenever the evidence, viewed in the light most favorable to the nonmoving party, is such that reasonable minds could differ as to the answer."); *Parker v. Nakaoka,* 68 Haw. 557, 722 P.2d 1028, 1031 (1986) (whether plaintiff has met No–Fault threshold requirement of significant permanent loss is for jury to determine if facts relating to injury are in dispute and reasonable minds could differ on result); *Stang v. Caragianis,* 243 Kan. 249, 757 P.2d 279, 286 (1988) (not "all such [threshold] determinations must be determined as a matter of law"; trial court did not err in submitting question whether plaintiff's permanent disfigurement was significant and serious to jury); *Phelps v. MacIntyre,* 397 Mass. 459, 491 N.E.2d 1067, 1070 (1986) (statutory threshold questions of permanent and serious disfigurement and of medical expenses in excess of $500 were properly submitted to jury); *Norquoy v. Metcalf,* 575 So.2d 322, 323 (Fla.Dist.Ct.App. 1991) (as testimony of defendant's doctor "create[d] a jury issue as regards [plaintiff's injury] being permanent," trial court erred in refusing to instruct jury on no-fault threshold requirement); *Powell v. Napolitano,* 578 So.2d 747, 748–49 (Fla.Dist.Ct.App.1991) (error in directing verdict since there was evidence from which jury could conclude that plaintiff did not suffer permanent injury); *Williams v. Dulaney,* 331 Pa.Super. 373, 480 A.2d 1080, 1085 (1984) (judge must make initial determination whether facts presented to jury can, as a matter of law, meet threshold; if they can, factual question must be submitted to jury); *Hansen v. White,* 190 Ga.App. 596, 379 S.E.2d 536, 538 (1989).

We reiterate: To survive summary judgment in this context, the plaintiff must make a prima facie showing that the injury falls within one of the categories of the No-Fault statute. *Smith,* 631 A.2d at 392. To survive a motion for directed verdict, the plaintiff must show that his injuries are such that reasonable persons could differ with regard to whether the injuries fall within one of those categories. These standards, we are satisfied, will permit the "filter[ing] out [of] undeserving cases" (the trial judge's words) and so avoid "perpetuat[ing] a system of unnecessary litigation" for injuries that "clearly [are] minor one[s]." *Licari,* 455 N.Y.S.2d at 574, 441 N.E.2d 1088. To begin with, as we emphasized in *Smith, supra,* the substantive standards of § 35–2105(b)(1) are fairly exacting. *See, e.g.,* 631 A.2d at 391 ("We consider, just as the court did in *Licari* [,] that 'substantially all' means what it says, *i.e.,* to 'a great extent' "). *See also Oswin v. Shaw,* 609 A.2d at 429 (to show required "serious impact" of injury on plaintiff's life, plaintiff "must submit *objective, credible* evidence that could support a jury finding in his or her favor" (emphasis in original)). And second, beyond the gate-keeping role of the court implicit in the summary judgment and directed verdict standards, the jury will perform additional screening in cases submitted to it, since it will decide the statutory threshold issues on interrogatories before reaching the merits of the plaintiff's suit. *See id.* 609 A.2d at 424 ("We would anticipate the use of special interrogatories to ascertain the jury's conclusion [on the threshold issues]").

It may be, as the trial judge thought, that committing these issues exclusively to the court's determination would provide additional filtering protection, but it would do so at a cost. Under that regime, as the Supreme Court of New Jersey has pointed out, "When a plaintiff prevails in the pretrial hearing [on the statutory threshold], a 'double trial' situation is created, with both parties being required to produce their evidence—including medical experts, whose services are generally not inexpensive—twice: once at the pretrial hearing, and again at trial." *Id.* 609 A.2d at

---

1. By "verbal-threshold" the New Jersey court meant a statutory threshold "defined by words rather than dollar amounts." 609 A.2d at 418.

425. In cases the trial judge expects to be close, one supposes, the judge could avoid the double trial by reserving judgment on the threshold issues until all of the evidence has been presented to the jury; yet in that case, assuming the judge finds against the plaintiff on those issues, convening a jury will have been an unnecessary act since there is nothing left for the jury to decide. Finally, as the New Jersey court noted, committing the issue exclusively to the court raises the conceptual problem of

> the effect of a finding by the court, on disputed facts, that the plaintiff's injuries meet the verbal threshold: will a jury empaneled to award damages be collaterally estopped by such a finding, or will the jury retry that issue?

*Id.* 609 A.2d at 427.

### III.

■ The remaining question under § 35–2105(b)(1) is whether Hoang presented enough evidence that his injuries met the "medically demonstrable ... impairment" standards so as to require jury resolution of that issue. State Farm contends he did not. We hold that he did.

Hoang offered the testimony of a neurologist, Dr. Peter Bernad, and a chiropractor, Dr. David Ellis. Taken together, this testimony would permit a reasonable trier of fact to conclude that Hoang's injuries satisfied both the second and third ("[b]" and "[c]") tests of § 35–2105(b)(1). Dr. Ellis testified that at the time of Hoang's initial examination and at the time of his final examination in October 1990, more than 180 days after the accident, Hoang had a "demonstrable impairment which significantly affected his ability to perform his professional activities." In Dr. Ellis' opinion, Hoang had sustained a permanent impairment rating of ten percent to his lower back. Hoang did not work at all from the date of the accident in February 1990 to April 24 of that year, and in October 1990, more than 180 days after the accident, he was restricted to working only four hours a day. On November 15, 1990, Dr. Bernad wrote a letter recommending that Hoang work no more than four hours a day. Dr. Bernad testified that as of November 1990,

he thought Hoang would be required to restrict his work hours for more than four months, though less than a year.

Hoang's own testimony provided corroborative evidence that he sustained a demonstrable impairment meeting the permanency and 180 continuous day standards. He testified that before the accident he worked 80 hours a week in his upholstery business. The nature of that work was very physical, requiring a great deal of bending and lifting, and that at the time of trial he still could not move furniture, do any lifting, or perform other tasks required by the upholstery business. The accident also affected his ability to do his usual and customary activities such as grocery shopping, caring for his children, and household chores.

Although, as State Farm points out, Dr. Bernad did not give Hoang a permanency rating, Dr. Ellis did, and Dr. Bernad's testimony provided some corroboration of that fact. As the trial judge stated, a ten-percent permanent impairment of the back, "which is a major organ aspect of the body," can hardly be said "as a matter of law [to be] not substantial." Moreover, both doctors stated that Hoang was restricted in his ability to perform his professional activities in September and November 1990, more than 180 days after the accident. Viewing the evidence in the light most favorable to Hoang, and allowing for a jury's right to draw all reasonable inferences therefrom, we must reject State Farm's argument that the judge should have directed a verdict in its behalf.

### IV.

■ Hoang's contention on cross-appeal that the trial judge erroneously dismissed his claim for punitive damages is without merit. As the judge pointed out, Hoang's suit was essentially for breach of contract. Thus, even if this court recognized a separate tort of bad faith denial of an insurance claim, an issue we do not decide here, Hoang did not plead that cause of action. Moreover, State Farm's actions on any view of the evidence did not " 'merge[ ] with, and assume[ ] the character of, a willful tort' " so as to support punitive damages. *Sere v. Group Hospital-*

*ization, Inc.*, 443 A.2d 33, 37 (D.C.1982) (citations omitted). Its conduct was marked by none of the " 'fraud, ill will, recklessness, wantonness, oppressiveness, wilful disregard of the plaintiff's right,' " or other aggravating circumstances necessary for such a claim. *Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 938 (D.C.1995) (citation omitted). State Farm made a total of $17,795.74 in payments to Hoang. Its decision to refuse additional benefits was made after receiving the medical report of its expert, Dr. Gladden, who pointed to the absence of any objective evidence of residual injury. The decision to terminate PIP benefits was made by two claim representatives, and was reviewed by a claim committee and a representative at the corporate office. Thus, even if the decision to terminate Hoang's benefits was erroneous, nothing in the record supported Hoang's characterization of it as malicious, oppressive, or made with willful disregard of Hoang's rights. The trial court properly dismissed the claim for punitive damages.

*Reversed and remanded for further proceedings consistent with this opinion.*